UNITED STATES of America,
Plaintiff–Appellee,

v.

Michael A. RESPRESS, Defendant–
Appellant.

No. 92–6059.

United States Court of Appeals,
Sixth Circuit.

Argued April 27, 1993.

Decided Nov. 9, 1993.

Karen K. Caldwell, U.S. Atty., Lexington, KY, Frederick A. Stine, V, Asst. U.S. Atty. (argued and briefed), E.J. Walburn, Asst. U.S. Atty., Covington, KY, for plaintiff-appellee.

Albert C. Hawes (argued and briefed), Covington, KY, for defendant-appellant.

Before: JONES and BATCHELDER, Circuit Judges; and ENGEL, Senior Circuit Judge.

BATCHELDER, Circuit Judge.

Defendant Michael Respress entered a conditional guilty plea to possession of cocaine with intent to distribute in violation of

21 U.S.C. § 841. On appeal, he challenges the district court's refusal to grant his motion to suppress the cocaine found in his luggage. The only issue before us is whether the government agents were justified in seizing Respress's suitcase and whether the duration of the seizure was reasonable.

## I

■ On November 19, 1991, Defendant Michael Respress was the next-to-last person to deplane Delta flight # 846 from Ontario, California arriving in Cincinnati, Ohio at 8:20 p.m. Task Force Officer Joseph Jones took notice of Respress because (1) he was coming from a so-called drug source city, (2) he was one of the last passengers to deplane, (3) he was wearing an all-black sweatsuit and a quantity of gold jewelry, and (4) he had no carry-on baggage. These characteristics allegedly match the "drug courier profile"[1] often used by narcotics investigators to identify possible drug couriers. Officer Jones watched Respress as he took a seat in the gate area, smoked a cigarette, and then went across the concourse to ask a Delta gate agent about his connecting flight. As Respress walked away from the Delta counter, Jones approached the gate agent and asked what Respress's travel plans were. He was told that Respress had a connecting flight to Akron/Canton. Upon further inquiry, the gate agent told Jones that Respress had made reservations for his one-way Ontario–Cincinnati–Akron ticket thirteen hours before departure and had purchased the $685 ticket with cash just twenty minutes before departure. Jones then followed Respress as he walked casually to the gate of his connecting flight.

Jones joined two of his fellow officers, Bauerle and Parker, and conferred briefly with them. They decided that Jones would approach Respress and ask to speak to him, while Parker and Bauerle walked ahead to the area of Respress's connecting gate.

Jones caught up to Respress and, walking alongside him, identified himself as a police officer, and asked to speak to him. Respress agreed and, in response to Jones's questions, said that he had been in Ontario visiting family for a few days and was returning to his home in Akron. Jones asked to see Respress's ticket and Respress complied; the ticket was issued to a Michael Foster. Jones then asked to see some identification, and Respress produced his driver's license, which was issued to Michael Respress on Ablewhite Avenue in Cleveland, Ohio. When Jones questioned Respress about the discrepancy between his ticket and license, Respress said that someone else had bought the ticket for him and that the ticket must have been issued in the other person's name. When Jones inquired as to why Respress's license listed a Cleveland address if he lived in Akron, Respress said that he had recently moved to Akron. Jones recorded the number on the baggage claim stub that was stapled to the ticket jacket and returned the ticket to Respress. Jones asked why Respress was flying on a one-way ticket and he replied that someone else had bought him his ticket to Ontario, so he only needed a one-way ticket to return to Akron.

Based on the suspiciousness of some of Respress's answers, Jones asked if Respress would consent to a search of his person and baggage. Respress refused, saying that he had been cooperative with Jones up to that point and that he did not want to miss his connecting flight, which was leaving in ten minutes. Jones told Respress that he was not under arrest and that he was free to go. Respress then continued on his way to his connecting flight, and Jones went to the airport police office intending to call for a dog sniff test of Respress's baggage.

When Respress neared his connecting gate, he glanced at the flight board, went to a public telephone and made a call, and then went downstairs to Delta's main ticket counter. Officer Parker watched all of this and followed Respress downstairs, where Respress spoke briefly with a ticket agent and then headed outside the terminal. Parker

---

1. "The 'drug courier profile' is an abstract of characteristics found to be typical of persons transporting illegal drugs." *Florida v. Royer*, 460 U.S. 491, 493 n. 2, 103 S.Ct. 1319, 1322 n. 2, 75 L.Ed.2d 229 (1983). The profile is a lawful starting point for police investigations. *See United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).

identified himself to the ticket agent and learned that Respress had inquired about cashing a check in order to buy a one-way ticket to Cleveland. The ticket agent also mentioned that there was something suspicious about the way Respress was acting. Parker then followed Respress out of the terminal and saw Respress get into a taxi. Parker quickly radioed the airport police for a patrol car, and Parker and the patrolman stopped Respress's taxi.

Officer Parker identified himself, told Respress that he would like to speak to him, and asked why he was leaving the airport and what he was going to do about his luggage. Respress responded that he was going to Cleveland and would pick up his suitcase there. Respress consented to a pat-down search, which revealed $700 in cash.

Officer Jones then arrived on the scene and asked Respress whether he intended to take the taxi all the way to Akron, his alleged destination. Respress responded that he had changed his plans and decided to visit a friend named McAllen on Market Street in Cincinnati. However, he was not able to give an address for McAllen. Respress explained that he was going to Cleveland eventually and would pick up his suitcase there. When Jones reminded Respress that his flight was going to Akron, not Cleveland, Respress said that he meant to say Akron but that he was very tired.

After discovering that Respress no longer had his ticket with him, Officer Bauerle obtained consent from the taxi driver to search the taxi. Parker then reached down behind the cushion of the rear seat where he could feel a piece of paper, which he could not pull out. After removing the rear seat cushion, Parker retrieved the paper, which turned out to be Respress's ticket. Respress said that it must have fallen out of his pocket. Parker questioned the taxi driver, who said that Respress had instructed him to drive to the bus station so that he could catch a bus to Cleveland. Jones asked Respress if he would consent to a search of his suitcase, and, as before, Respress said no. Jones then told Respress that they would attempt to seize his bag and get a search warrant for it, and Respress departed.

During the next several hours, Jones retrieved the suitcase from the airline, completed an affidavit, and presented the affidavit to a magistrate judge. At 7:05 a.m., approximately ten hours after the suitcase was seized, the magistrate judge issued a search warrant for the bag. The search was conducted and 2.8 kilograms of cocaine were seized from the suitcase. The suitcase was then sent on to the airport. Two days later, Respress called the airport to confirm the bag's arrival, and when he attempted to retrieve his bag at the airport, he was arrested.

Respress was indicted for possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841. He filed a motion to suppress the cocaine on grounds that it was seized in violation of the Fourth Amendment; the motion was denied. He then entered a conditional guilty plea and was sentenced to 78 months imprisonment with a four year term of supervised release. This appeal followed.

## II

█ The sole issue before us is whether the officers had sufficient justification to seize the suitcase while they obtained a search warrant. Respress does not contest his consensual encounter with Officer Jones, the *Terry* stop[2] of his taxi, the consensual searches of his person, or the validity of the search warrant for his suitcase. Respress only argues that the seizure of his suitcase without his consent and without a warrant violated the Fourth Amendment. The government contends that "the appropriate focus is whether, based upon the totality of the circumstances, reasonable suspicion existed to detain Respress' suitcase."

Both parties cite *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) as support for their respective conclusions. *Place* concerned whether "reasonable suspicion," which is less than probable cause, permitted the temporary detention of a piece of luggage in order to subject the bag to a canine sniff test for drugs. The Court first

---

**2.** *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

determined that a sniff test is not a search under Fourth Amendment jurisprudence, but a temporary detention of a suitcase is a seizure for Fourth Amendment purposes. *Id.* at 707, 103 S.Ct. at 2645. The Court then held that "reasonable suspicion" was sufficient to support an investigatory detention of luggage which was limited in scope; but, it also held that the detention in the particular case before it was not reasonable under the circumstances. This conclusion was required, the Court said, for several reasons, including the duration of the seizure (90 minutes) and the failure of the officers to tell Place where or when he could get his suitcase back. *Id.* at 707–710, 103 S.Ct. at 2644–2646. Relying on *Place,* the government argues that the seizure in the instant case was the least intrusive way of pursuing the investigation and that the officers were justified in "detain[ing] the suitcase long enough to confirm or dispel their suspicions."

We find the instant case to be distinct from both Respress's and the government's characterizations of it. This is not a case involving reasonable suspicion which justifies something less than a search (e.g., a sniff test), nor is this a case in which a positive sniff test takes "reasonable suspicion" into the realm of "probable cause" thus justifying the issuance of a search warrant. This was a plain old-fashioned seizure of a person's effects, based on probable cause, in order to prevent the disappearance of evidence and so that a warrant could be obtained and a search conducted.

The practice of seizing an item based on probable cause in order to secure a search warrant for it was approved long before *Place.* Indeed, the Court's decision in *Place* would have been unnecessary had there been probable cause to seize the defendant's suitcase, because seizures based on probable cause have long been lawful.

Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the [Fourth] Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present.

*Place,* 462 U.S. at 701, 103 S.Ct. at 2641. *See also United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (detention of footlocker based on probable cause permissible); *Arkansas v. Sanders,* 442 U.S. 753, 761–62, 99 S.Ct. 2586, 2591–92, 61 L.Ed.2d 235 (1979) (defendant conceded and Court agreed that seizure of defendant's suitcase based on probable cause was unobjectionable); *United States v. Jacobsen,* 466 U.S. 109, 114, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984) (seizure of package being transported by Federal Express not unconstitutional, because "government agents may lawfully seize such a package to prevent loss or destruction of suspected contraband"; but, "the Fourth Amendment requires that they obtain a warrant before examining the contents of such a package."); *United States v. Jodoin,* 672 F.2d 232, 233–36 (1st Cir.1982) (three-day detention of luggage permissible based on probable cause). Therefore, we need only consider whether on these facts the officers had probable cause to detain Respress's suitcase.

■■■ We initially note that because the officers obtained no new investigatory information between the time of the seizure and the time they applied for the search warrant, if there was probable cause to *search* the suitcase, there was ipso facto probable cause to *seize* the suitcase.[3] And, because the

---

3. The dissent's assertion that "the magistrate never found that the officers seized the bag based upon probable cause, but rather that they did so based upon reasonable suspicion," *see* p. 491 n. 7, is not supported by the record. The magistrate judge concluded that the stop of Respress's taxi was justified based on reasonable suspicion and that in the course of the taxi stop, "the officers discovered additional information which enhanced their suspicion of some wrongdoing

and led them to seek a search warrant for the defendant's luggage." At no time did the magistrate judge say the officers seized the bag based on mere reasonable suspicion.

Also, the dissent's suggestion that the magistrate judge who issued the search warrant considered the fact that Respress had not picked up his bag by the next day, *see* p. 489 n. 3, is factually inaccurate. At the time the search warrant was issued, the government still held the

magistrate judge found probable cause and issued the warrant, for us to find a lack of probable cause would be a bold second-guess on our part, and in direct contradiction of binding authority, which requires that we generally defer to a magistrate's finding of probable cause.[4] *See Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983) (probable cause determination made by a judicial officer should be given great deference by a reviewing court because that officer is in the best position to consider the totality of the circumstances); *see also United States v. Williams,* 962 F.2d 1218, 1221 (6th Cir.) (factual conclusions made by the district court in refusing to suppress evidence are reviewed for clear error and the evidence is taken in a light most likely to support the district court's decision), *cert. denied,* —— U.S. ——, 113 S.Ct. 264, 121 L.Ed.2d 194 (1992).

■ Considering the facts carefully, we find that the officers did have probable cause. At the time Respress's suitcase was seized, the officers knew the following about Respress:

(1) He had certain characteristics that matched those of the typical drug courier (as identified by the drug courier profile), among them, coming from a drug source city and having purchased his $685 one-way ticket with cash twenty minutes prior to departure;

(2) The name on his ticket was not his true name;

(3) His driver's license address was different from his claimed place of residence;

(4) After a brief interchange with Officer Jones, he suddenly changed his travel plans, even though he had just told Jones he did not want to miss his connecting flight to Akron (which was departing shortly and on which his baggage was set to go);

(5) He inquired at the Delta ticket counter about cashing a check in order to purchase a ticket to Cleveland, when he had $700 cash in his pocket and could have easily arranged an Akron–Cleveland flight or shuttle once he arrived in Akron;

(6) His plans as described to the taxi driver were to take a bus to Cleveland, but he told the officers his plans were to visit a friend in Cincinnati for a time, for whom Respress had no address;

(7) While in the taxi, his plane ticket to Akron "fell" out of his pocket so far down in between the seat cushions that removal of the seat was required in order to retrieve it; and

(8) By purposefully missing his connecting flight to Akron and getting in a taxi to go somewhere in Cincinnati, he abandoned his luggage (at least for a time), with the apparent purpose of distancing himself from what might be found in his suitcase.

Admittedly, many of these facts are also consistent with innocent behavior, particularly when viewed separately, but when facially innocent actions taken together create bona

---

bag, the government had not made arrangements to deliver the bag, and Respress had made no inquiry regarding its availability.

4. The dissent's reliance on *United States v. Ogbuh,* 982 F.2d 1000, 1002 (6th Cir.1993) for the proposition that we review a finding of probable cause de novo, *see* p. 491 n. 7, is misplaced. The probable cause at issue in *Ogbuh* was the probable cause to arrest without a warrant, not the probable cause derived from the face of an affidavit in support of a search warrant. There is a clear distinction here, and the Supreme Court has spoken clearly on this point:

[W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's "determination of probable cause should be paid great deference by reviewing courts...."

. . . .

...The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

*Illinois v. Gates,* 462 U.S. 213, 236, 238–39, 103 S.Ct. 2317, 2331, 2332–33, 76 L.Ed.2d 527 (1983) (quoting *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969) and *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960), *overruled in part on other grounds by United States v. Salvucci,* 448 U.S. 83, 85, 100 S.Ct. 2547, 2549, 65 L.Ed.2d 619 (1980), respectively).

fide suspicions, probable cause may arise. *See Gates,* 462 U.S. at 243–45, 103 S.Ct. at 2334–35.[5] And, when taken in a light most likely to support the magistrate's finding of probable cause, the facts clearly exhibit a substantial probability that incriminating evidence would be found in Respress's suitcase. Respress's contradictory statements, suspicious behavior, sudden change of plans, and apparent abandonment of his luggage, made it probable that drugs would be found in his suitcase. Probable cause requires nothing more.[6]

■ The analysis does not end here, however, because even with the existence of probable cause to effect a seizure, the duration of the seizure pending the issuance of a search warrant must still be reasonable. *See United States v. Saperstein,* 723 F.2d 1221 (6th Cir.1983). Respress does not direct our attention to any facts which would illustrate an unreasonable delay in securing the warrant; in fact, he does not even specifically object to the duration of the seizure. Our review of the record reveals that the time between the seizure of the suitcase and the issuance of the warrant was approximately ten hours, and, given the time of day, this was not an unreasonable length of time for preparing an affidavit, submitting it to a magistrate, having it reviewed, and getting the warrant issued. We also note that durations longer than this have been upheld without controversy. *See, e.g., Jodoin* (three-day period between seizure of suitcase and acquisition of warrant permissible where seizure was based on probable cause). Because the time between the seizure of the suitcase and the issuance of the warrant was reasonable, we uphold the seizure and the search.

5. The *Gates* Court wrote:
   As discussed previously, probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; .... In making a determination of probable cause the relevant inquiry is not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of noncriminal acts.
   *Id.* at 243 n. 13, 103 S.Ct. at 2335 n. 13.

6. Because we find probable cause existed to detain the suitcase, we do not reach the question of

## III

Finding that the seizure of Respress's suitcase was based on probable cause and reasonable in duration, we AFFIRM the conviction.

NATHANIEL R. JONES, Circuit Judge, dissenting.

Acting without a warrant, officials at the Cincinnati airport seized Michael Respress' luggage *en route* and held it overnight until they could obtain a warrant and search it. The officers testified that they instead could have called the Akron airport, Respress' destination, and arranged for narcotic detection dogs to sniff the luggage there. In upholding this seizure, the majority has discarded established constitutional law and reformulated it in a new and undesirable way. Believing that the officers' actions violate the protection that the Fourth Amendment provides against unreasonable seizures, I dissent.[1]

### I

Though, as I will describe later, I do not agree that the officers had probable cause to search the luggage in this particular case, I feel obligated at the outset to articulate my strong opposition to the new constitutional law the majority creates here, namely the "probable cause exception" the majority reads into the Constitution's warrant requirement.

The Fourth Amendment requires officials to obtain a warrant before seizing property. "In the ordinary case, the Court has viewed a

whether the seizure of the suitcase or the length of its detention would have been justified based on reasonable suspicion alone.

1. The Fourth Amendment provides:
   The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

seizure of property as *per se* unreasonable within the meaning of the Fourth Amendment unless it is accompanied by a search warrant." *United States v. Place*, 462 U.S. 696, 701, 103 S.Ct. 2637, 2641, 77 L.Ed.2d 110 (1983).[2] This requirement occupies a prominent place in constitutional law, operating as a matter of course as a check upon law enforcement officers. By requiring that conclusions concerning the reasonableness of a seizure be drawn by a neutral magistrate instead of an officer who is charged with a duty to ferret out crime, the warrant requirement protects against unreasonable assertions of executive authority. *Arkansas v. Sanders*, 442 U.S. 753, 758–59, 99 S.Ct. 2586, 2590, 61 L.Ed.2d 235 (1979).

In recent years, the Supreme Court has articulated exceptions to the warrant requirement, which allow warrantless searches and seizures in situations where: 1) the individual consents, *see Illinois v. Rodriguez*, 497 U.S. 177, 183–84, 110 S.Ct. 2793, 2798–99, 111 L.Ed.2d 148 (1990); 2) the search or seizure is incident to a lawful arrest, *see United States v. Robinson*, 414 U.S. 218, 227–29, 94 S.Ct. 467, 473–74, 38 L.Ed.2d 427 (1973); 3) the item to be seized is an instrumentality of the crime within plain view, *see Coolidge v. New Hampshire*, 403 U.S. 443, 464–73, 91 S.Ct. 2022, 2037–42, 29 L.Ed.2d 564 (1971); 4) the action falls under the "automobile exception," *see California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991); and 5) an official has "reasonable suspicion" of illegal activity and initiates a "stop and frisk," *see Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

The majority opinion completely mistakes these exceptions for the rule. The majority bases its holding on *Place*'s simple recognition of those exceptions:

> Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the [Fourth] Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present.

Maj. op. at 486 (quoting *Place*, 462 U.S. at 701, 103 S.Ct. at 2641). The majority's belief that this portion of *Place* states that having probable cause is itself enough to seize a bag without a warrant renders the clause beginning with "if" entirely meaningless. It likewise renders meaningless the warrant requirement itself.

The majority in effect establishes a new and unprecedented exception to the warrant requirement, one that allows a seizure whenever a magistrate properly determines *afterwards* that probable cause existed at the time of the government's action.[3] The majority does this despite the "familiar principle ... that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.'" *Coolidge v. New Hampshire*, 403 U.S. 443, 468, 91 S.Ct. 2022, 2039, 29 L.Ed.2d 564 (1971).[4] *Coolidge* pro-

2. *See also Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968) ("the police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure ... in most instances failure to comply with the warrant requirement can only be excused by exigent circumstances."); *Arkansas v. Sanders*, 442 U.S. 753, 758, 99 S.Ct. 2586, 2590, 61 L.Ed.2d 235 (1979) ("In the ordinary case, therefore, a search of private property must be both reasonable and pursuant to a properly issued warrant."); *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d 564 (1971).

3. The majority actually goes much further than this, for no magistrate ever determined that probable cause existed at the time of this seizure. A magistrate found, after Respress had not picked up the bag by the next day, that probable cause then existed to search it. Because of the time that had passed, the majority is in error when it applies the magistrate's probable cause finding "ipso facto" to a seizure that occurred earlier. Maj. op. at 486. We should not presume a finding of probable cause, as the majority shows it does in its third footnote, where the magistrate does not make one.

4. If the majority means to say that exigent circumstances exist here, I see nothing that would make immediate seizure more necessary in this case than any routine airport surveillance case. The burden is on the government to show exigent circumstances. *Welsh v. Wisconsin*, 466 U.S. 740, 750, 104 S.Ct. 2091, 2098, 80 L.Ed.2d 732 (1984); *United States v. Ogbuh*, 982 F.2d 1000, 1003 (6th Cir.1993). I can see no good reason

vides a particularly relevant example of the logic the majority rejects. *See* 403 U.S. at 464–68, 91 S.Ct. at 2037–39. In that case, the Court considered a warrantless seizure and subsequent search of an automobile where *it assumed the state had probable cause to seize the car. Id.* at 464, 91 S.Ct. at 2037. Though the government argued that the seizure fit under the "plain view" exception to the warrant requirement, the Court rejected that position and found the search unconstitutional. Thus, *Coolidge* emphasizes that where officers fail to obtain a warrant, even a seizure supported by probable cause must fit into one of the exceptions if it is to survive constitutional scrutiny. Furthermore, the *Coolidge* Court decided it did not even have to address the constitutionality of the search, given that the seizure was illegal. *Id.* at 464–65, 91 S.Ct. at 2037.[5]

As well as contradicting established law, the majority's exception virtually swallows the rule, undermining the protection that the warrant requirement provides to all citizens when it mandates that "well-intentioned but mistakenly overzealous" officers go before a neutral magistrate before executing a search or seizure. *Coolidge,* 403 U.S. at 481, 91 S.Ct. at 2046. This new exception erodes the Fourth Amendment in an undesirable and harmful way.

## II

Even assuming the majority's constitutional framework, however, I disagree that the officers had probable cause to seize Respress' luggage.

Officer Jones took notice of Respress from the time the latter deplaned. Respress was arriving in Cincinnati from Ontario, California, which Jones considered to be a drug source city. Respress was one of the last passengers to deplane, and he wore a sweat suit and gold jewelry and had no carry-on baggage. After entering the lobby, he smoked a cigarette and asked a ticket agent about his connecting flight. Then he walked to his connecting flight. Everything Respress had done to this point is not only consistent with innocent behavior, but is common everyday behavior that hardly distinguishes him from other citizens in an airport.[6]

Some of the things that happened from this point were somewhat more unusual, but only mildly suspicious. Jones found out from the airline that Respress had paid cash for his ticket shortly before departure. Respress willingly agreed to let Jones question him, and Respress explained that there was a discrepancy between the names on his ticket and on his driver's license because someone else had bought his ticket. He also explained that someone else had bought the one-way ticket for the flight he took to Ontario.

The most suspicious thing that Respress did occurred after his questioning by Jones. He left the airport, apparently deciding not to take his connecting flight. Officers, soon joined by Jones, stopped the taxi that Respress had entered, and obtained Respress' consent to search his person twice. The searches revealed no weapons nor anything of note except for $700 cash. Respress said

why the officers could not have waited for dogs to sniff the bags in Akron.

5. The rule that probable cause does not redeem the failure to obtain a warrant has long applied to searches as well as seizures. *See, e.g., Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967).

6. A quick survey of various cases involving drug courier profiles can easily establish how malleable the factors relied upon are. For instance, though Officer Jones says he found it suspicious that Respress had no carry-on luggage, in *United States v. Sokolow,* 490 U.S. 1, 5, 109 S.Ct. 1581, 1584, 104 L.Ed.2d 1 (1989), what the officer found suspicious is that the alleged courier *did* have carry-on luggage. Similarly, Jones found it

suspicious that Respress was the second to last passenger to deplane, while the defendant in *United States v. Moore,* 675 F.2d 802, 803 (6th Cir.1982), created suspicion by being first to deplane. Additionally, the cases reveal quite a large number of "drug source cities," though the source city in this case (Ontario, California) is not often mentioned. *See generally Sokolow,* 490 U.S. at 13–14, 109 S.Ct. at 1588–89 (1989) (Marshall, J., dissenting) (cataloging profile's way of adapting to any particular set of observations). When courts give significant weight to an officer's reliance on such descriptions, it becomes easy for the profile to be used as a pretext for a relevant factor the officer does not wish to articulate, namely the suspect's race.

that he decided to visit a friend in Cincinnati and would pick up his bag at its destination. He never, however, indicated he was "abandoning" or relinquishing his ownership of the luggage. Respress' descriptions of where he was going in Cincinnati appeared confused, and officers searching the taxi found his airline ticket inside behind the seat cushion. The officers did not arrest Respress for anything, and he went on his way.

The majority opinion argues that the police had probable cause at this point, such that they could have arrested Respress. I disagree. At the time, the officers did not have "reasonably trustworthy information [ ] sufficient to warrant a prudent man into believing" that Respress had committed a drug offense. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). This is not a case where officers had knowledge that a crime occurred and were pursuing a suspect. They had no knowledge that a crime of any sort had occurred. The officers found no paraphernalia nor anything else on Respress' person connecting him to drugs. He carried no weapons. They did not see him associating with known criminals nor with anyone else suspicious. They knew of no prior record of criminal activity or involvement. They did not see him placing anything in his luggage or removing anything from it. The majority here finds probable cause in a situation where Respress has done nothing more than act suspiciously. Officers cannot arrest citizens who have acted as Respress did, giving no "reasonably trustworthy" indications of ties to a drug crime.[7]

I would hold that the officers here, like those in many airport seizure cases, had reasonable suspicion to briefly detain Respress' luggage. This approach does not unreasonably hamper law enforcement. In fact, the

Court created the reasonable suspicion exception to the warrant requirement for the purpose of giving officials the latitude they need to fight crime. This is all the latitude they need in cases such as this one. Here, all the officers had to do to operate constitutionally is what they originally considered— phone the Akron airport officials and ask them to have narcotics dogs sniff the bags upon Respress' arrival.

## III

Not only is this a "reasonable suspicion" case, but it has always been one. In the nearly two years since the seizure of Michael Respress' bag, all dispute has focused upon whether the officers had reasonable suspicion to seize it. The more extreme notion that the officers actually had probable cause to do so never entered this case until appearing today as the basis for the majority's opinion.

Even Officer Joseph Jones, who seized the bag, testified that he believed he had authority to do so without a warrant because he had a reasonable suspicion of narcotics. When the parties first briefed the case before a Magistrate, the government argued only that the seizure was justified by reasonable suspicion. The Magistrate found that reasonable suspicion did permit the seizure, and the district court adopted that finding. In this appeal, the government's written brief argues that reasonable suspicion justified the seizure, and it never even hints that probable cause could do so. In fact, at oral argument, the government responded to questioning by conceding that it "probably did not have probable cause" at the relevant time and that "the question might better be ... did the facts that they knew, when they seized the bag, amount to reasonable suspicion?"[8]

---

7. The majority's probable cause determination is evidently based in part upon deference to the magistrate's determination of the same. Such deference is not appropriate here, because the magistrate never found that the officers seized the bag based upon probable cause, but rather that they did so based upon reasonable suspicion. *See* note 3, *supra.* In any event, "we review a finding of probable cause using a *de novo* standard." *United States v. Ogbuh,* 982 F.2d 1000, 1002 (6th Cir.1993); *accord United States v. Jaramillo,* 891 F.2d 620, 626 (6th Cir. 1989). Contrary to the majority's attempt to

distinguish *Ogbuh* because it involved an warrantless arrest, *Ogbuh* addressed a warrantless search as well. *Id.* Where, because of the absence of a warrant, a search or seizure must be justified by an exception to the warrant requirement, this circuit has emphasized that *de novo* review applies, as it does to any other conclusion of law. *United States v. Straughter,* 950 F.2d 1223, 1230 (6th Cir.1991).

8. The following colloquy, taken from the recording of the argument, shows how the government

The fact that everyone involved with this case was, until today, discussing it in terms of reasonable suspicion highlights the novelty of the majority's approach. It also points to an important consequence of the majority's new interpretation of the Constitution. When warrantless airport seizures are effected under the *Terry/Place* exception, airport officials (and government lawyers) have one set of constitutional standards to look to. If this case is to create a separate exception, policemen in this circuit will need to make judgments regarding which legal category their suspicion fits under when they decide whether they can detain luggage and for how long. Likewise, we can expect future airport seizure litigation—relatively common cases that already demand difficult evaluations of the circumstances of the police action—to involve the added dimension of boxing the circumstances into the proper category based upon the level of suspicion that officers are presumed to have had.

Like the court and magistrate below, I believe this is a reasonable suspicion case and therefore should be analyzed under reasonable suspicion precedents. This position is supported by the many airport surveillance/"drug courier profile" cases, which usually involve facts similar to the ones here and

uniformly ask if they constitute reasonable suspicion.[9]

## IV

Reasonable suspicion is one of the recognized exceptions to the warrant requirement, deriving from *Terry*'s acceptance of police "stop-and-frisks" of suspicious persons. *Place* expanded *Terry* to this very context, holding that an official could seize a bag based upon reasonable suspicion that it contained narcotics.

Having found that the officers had reasonable suspicion to briefly detain the bag, I would nonetheless find that their detention of it for approximately ten hours before obtaining a warrant violates the time limitations required by *Terry* and set out in *Place*. In *Place*, the Court concluded that:

> when an officer's observations lead him reasonably to believe that a traveler is carrying luggage that contains narcotics, the principles of *Terry* and its progeny would permit the officer to detain the luggage *briefly* to investigate the circumstances that aroused his suspicion, provided that the investigative detention is properly limited in scope.

resisted Judge Batchelder's attempt to characterize this as a probable cause case and then assured me it was not one:

> [Judge Batchelder] *Is there a difference between the time limitation [. . . where] the question was reasonable suspicion [. . .] and between the situation in which by the time they decided to actually seize the luggage they had what perhaps amounted to probable cause and they wanted to get a warrant?*
> [Counsel] I think there is a difference your Honor and I think that's what occurred in this case. *When they stopped that taxi cab, they probably did not have probable cause . . .*
> [Judge Batchelder] . . . isn't the question what [. . .] total information did they have prior to the seizure of the bag and was that sufficient to be probable cause?
> [Counsel] That's correct your Honor. Or as the question might better be . . . did the facts that they had, *did the facts that they knew, when they seized the bag amount to reasonable suspicion?*
> [Judge Batchelder] . . . they went and got a warrant, did they not?
> [Counsel] They did, your Honor, and the warrant was issued. The magistrate issued the warrant. Based upon . . .
> [Judge Jones] A warrant to do what?

> [Counsel] Search the bag your Honor . . .
> [Judge Jones] But not probable cause to arrest or seize Respress?
> [Counsel] No your Honor, he was not arrested or . . . He was not arrested. He was told he was free to leave.
> (Emphasis added.)

That the government avoids arguing probable cause here is of course not at all surprising, in that they did not do so in their brief and had not done so in the earlier proceedings.

**9.** *See, e.g., United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *United States v. Weaver*, 966 F.2d 391 (8th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 829, 121 L.Ed.2d 699 (1992); *United States v. Grant*, 920 F.2d 376 (6th Cir.1990); *United States v. Jaramillo*, 891 F.2d 620 (7th Cir.1989), *cert. denied*, 494 U.S. 1069, 110 S.Ct. 1791, 108 L.Ed.2d 792 (1990); *United States v. White*, 890 F.2d 1413 (8th Cir. 1989), *cert. denied*, 498 U.S. 825, 111 S.Ct. 77, 112 L.Ed.2d 50 (1990); *United States v. Quigley*, 890 F.2d 1019 (8th Cir.1989), *cert. denied*, 493 U.S. 1091, 110 S.Ct. 1163, 107 L.Ed.2d 1066 (1990).

 

*Place,* 462 U.S. at 706, 103 S.Ct. at 2644 (emphasis added). *Place* held that even though a brief seizure can be permissible, the 90–minute detention of the bag in that case was unreasonable. The *Place* Court did not establish a rigid time formula for permissible luggage seizures, but found that the Court had never approved such a lengthy detention of baggage before. *Id.* at 710–11, 103 S.Ct. at 2646–47. In finding the 90–minute detention unreasonable, the Court relied in part on the fact that the police could have minimized the intrusion upon the defendant by calling ahead to the airport where he was to arrive and arranging for narcotic detection dogs to sniff them there. *Id.* at 710, 103 S.Ct. at 2646. Instead, the officials spent time taking the defendant's bags to another location where such dogs were available.

Following the *Place* Court, I would find this ten-hour detention of the luggage unreasonable.[10] Officer Jones testified here that he had at first planned to call ahead to the Akron airport to arrange for a dog-sniff of Respress' baggage when he arrived. Later, Jones changed his mind and had the bags seized in Cincinnati, held them overnight, and obtained a search warrant the next morning. Though local officials may wish to receive the credit for stopping crime in their airport, *Place* requires them to minimize the intrusion upon individuals whose luggage they seize. If Cincinnati officers wish to themselves examine the luggage of persons who create a reasonable suspicion, they ought to have a narcotic detection dog available at their disposal. We must remember that though some of those who interpose Fourth Amendment principles are viewed as unsavory or sinister individuals, the Amendment's protections nevertheless extend to them as well as to the "innocent." In this respect, I align myself with the wise counsel Lord Atkin offered during the darkest days of World War II: "In England amidst the clash of arms the laws are not silent."[11] Similarly, in the United States, as the so-

called war on drugs is waged, the guarantees of the Fourth Amendment do not stand mute. The Supreme Court has made clear that the Amendment protects citizens from such lengthy seizures of their personal effects as occurred here.

For this, and for the other reasons stated, I dissent from both the reasoning and the result of this opinion.

---

**10.** *See also United States v. Borys,* 766 F.2d 304, 313 (7th Cir.1985) (75–minute delay unreasonable); *Moya v. United States,* 761 F.2d 322, 327 (7th Cir.1984) (3–hour delay excessive); *United States v. Saperstein,* 723 F.2d 1221, 1231–33 (6th Cir.1983) (13–hour delay excessive); *United*

States *v. Puglisi,* 723 F.2d 779, 790–91 (11th Cir.1984) (3–hour delay unreasonable).

**11.** *Liversidge v. Anderson,* 3 All E.R. 338, 361 (1941).