**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Erico RICHARDSON, Defendant–**
**Appellant.**

No. 00–6168.

United States Court of Appeals,
Sixth Circuit.

Feb. 21, 2002.

Before JONES and MOORE, Circuit Judges; HAYNES,* District Judge.

## OPINION

HAYNES, District Judge.

Defendant–Appellant Erico Richardson appeals the denials by the district court of his two motions to suppress his statements and other evidence obtained by the Shelby County, Tennessee, deputy sheriffs when they arrested Richardson for possessing cocaine with intent to distribute. Because the deputy sheriffs did not coerce Richardson into making incriminating statements after his arrest, and because they had probable cause to arrest Richardson, we AFFIRM the district court's rulings.

## I. BACKGROUND

According to the district court's findings, on July 7, 1999, Shelby County, Tennessee

---

* The Honorable William J. Haynes, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

deputy sheriffs seized, searched and arrested Richardson based upon information that Richardson was in possession of crack cocaine and en route to deliver the cocaine to a confidential informant cooperating with these officers. Several deputy sheriffs intercepted and arrested Richardson as he returned to his vehicle after looking inside a nearby unmarked surveillance vehicle occupied by a deputy sheriff who had been observing Richardson near the residence.

One week prior to his arrest, a confidential informant told Dirk Beasley of the Shelby County Sheriff's narcotics unit, that he "had ordered two ounces of 'crack' cocaine" from "a 'coke' dealer" named Richardson. The informant identified Richardson from four or five photographs and identified a residence where the informant had seen Richardson. This informant had provided Beasley two prior accurate tips that led to the seizures of drugs and arrests on felony drug charges.

Beasley and others in the sheriff's office surveyed this residence with an officer posted thirty to forty yards from the residence. Beasley instructed the informant to call him when Richardson telephoned him about the sale of crack cocaine and when Richardson was to leave the residence to deliver the cocaine. The surveillance team intended to arrest Richardson while he was en route to deliver the drugs, but abandoned their plan when Richardson approached a nearby surveillance vehicle shortly after leaving the residence. Richardson parked behind this vehicle, walked to the vehicle, and looked inside.

Although the surveillance vehicle's windows were tinted, the deputy sheriff who was seated inside and was wearing a sheriff's jacket, became concerned that Richardson saw him. The deputy sheriff inside the vehicle called for assistance. Concerned for that officer's personal safety, the remaining deputy sheriffs in the surveillance team "rushed into the cove … with guns drawn" and seized Richardson as he walked away from the surveillance vehicle. Deputy sheriffs placed Richardson on the pavement and handcuffed him, but at that point, the officers did not advise Richardson of his *Miranda*[1] rights nor question him. Richardson did not speak to the officers. With Richardson handcuffed, one deputy sheriff performed a pat-down search of Richardson's person.

Other team members and a dog that was trained to detect narcotics searched Richardson's vehicle. The dog gave a positive reaction for drugs near the driver's seat where Richardson had been seated. A search of the vehicle yielded keys, currency and a plastic bag containing a hard substance. An officer removed the bag, visually inspected its contents, and concluded that the bag likely contained "crack" cocaine. Deputy sheriffs then arrested Richardson, and advised him of his *Miranda* rights.

The officers were also concerned about Richardson's ability to "return to the house and destroy evidence" as well as the opportunity for any persons in the residence to destroy any evidence or contraband in the residence. The officers asked Richardson whether other persons were in the residence. When Richardson confirmed the presence of others in the residence, the officers asked for Richardson's permission to search the residence, but Richardson stated that as a nonresident, he could not give permission to search. The officers repeatedly knocked at the residence's front door to gain entry, without success. The officers then used the keys found on Richardson's person to enter the

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

residence. The officers performed a protective sweep of the residence and encountered Latanya Watson, Richardson's girlfriend, who was inside. Ms. Watson gave her written permission to search her residence.

The officers' search of the residence produced fifty-nine "rocks" of cocaine, a portion of a slab of cocaine, $11,836 in United States currency, and a bulletproof vest. About the time the officers obtained consent to search, Richardson was escorted into the residence and then volunteered that all of the "drugs and stuff" belonged to him, without any questioning or attempts by the officers to talk to him.

Richardson's first motion to suppress concerns his statements to deputy sheriffs at the time of his arrest. Richardson alleges that the deputy sheriffs threatened, forced, and coerced him into making statements. Richardson contends that the deputy sheriffs arrested him without advising him of his *Miranda* rights. Richardson's second motion to suppress concerns contraband and other evidence seized from his vehicle and his girlfriend's residence by the deputy sheriffs without a warrant or probable cause as required by the Fourth Amendment. The district judge referred the motions to a magistrate judge and adopted his findings and recommendations to deny the motions.

In effect, the district court found that despite the lack of a warrant, the officers had probable cause to seize, search and arrest Richardson and had consent to search the residence. The magistrate judge who made the findings of fact and conclusions of law for the district court concluded that: (1) the deputy sheriffs did not obtain Richardson's statements by threat, force, or coercion prior to advising him of his *Miranda* rights; (2) Richardson voluntarily admitted his illegal cocaine possession; (3) the deputy sheriffs had

probable cause when they conducted a "borderline" stop and frisk before arresting Richardson for having cocaine on his person; and (4) Richardson's girlfriend consented to the search of her residence that justified the search and seizure of drugs found at her residence.

Richardson pled guilty to two counts of possessing a controlled substance with intent to distribute. The district court entered judgment, sentencing Richardson to 210 months on each count to run concurrently with concurrent four-year and three-year periods of supervised release. Richardson preserved his right to appeal the district court's rulings on his arrest and the admission of his incriminating statements as well as the searches of his vehicle and his girl friend's residence.

## II. ANALYSIS

▮▮ "When reviewing a motion to suppress evidence, we will reverse factual findings of the district court only if they are clearly erroneous. Conclusions of law, however, are reviewed *de novo*." *U.S. v. Mick*, 263 F.3d 553 (6th Cir.2001) (citing *United States v. Leake*, 998 F.2d 1359, 1362 (6th Cir.1993)). While a district court's factual findings are subject to the clearly erroneous standard of review, the reasonableness of the officers' conduct is subject to this Court's *de novo* review. *United States v. Kennedy*, 61 F.3d 494, 497 (6th Cir.1995) (citing *United States v. Williams*, 962 F.2d 1218, 1221 (6th Cir. 1992)). We review the district court's decision in this appeal *de novo*.

▮▮ We affirm the district court's finding that the deputy sheriffs did not obtain Richardson's statements by threats, force, and coercion in violation of *Miranda*. Richardson does not provide the specifics of the threats nor describe the officers' alleged coercive conduct. Richardson's

brief does not specify how the deputy sheriffs threatened, forced, or coerced Richardson when they arrested him and advised him of his *Miranda* rights. In fact, other than the single sentence alleging threats, force, and coercion, Richardson's brief does not mention this issue. Richardson has not alleged any physical injury resulting from the force used to arrest him and did not file a citizen's complaint against the arresting deputy sheriffs. On this record, we affirm the district court's ruling that Richardson was neither threatened, forced, nor coerced into making his statements to the arresting officers in violation of *Miranda*.

 As to the searches and seizures of Richardson, his vehicle and the residence, under the Fourth Amendment, a seizure occurs when the government either intentionally terminates a person's freedom of movement, *Brower v. County of Inyo*, 489 U.S. 593, 596–97, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989); *Fisher v. City of Memphis*, 234 F.3d 312, 318 (6th Cir.2000), or " 'meaningfully interferes' with an individual's possessory interests in the property." *Arizona v. Hicks*, 480 U.S. 321, 324–25, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987); *United States v. Baro*, 15 F.3d 563, 567 (6th Cir.1994).

 This Circuit has not developed a "litmus-paper test for determining when a seizure ... becomes an arrest." *Hardnett*, 804 F.2d at 356 (quoting *Florida v. Royer*, 460 U.S. 491, 506, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)). Our precedents "permit the use of force, such as handcuffs and guns, to effect a stop when such a show of force is [reasonably necessary for the protection of the officers involved] and reasonable under the circumstances of the stop." *United States v. Heath*, 259 F.3d 522, 530 (6th Cir.2001). "[When the] surrounding circumstances give rise to a justifiable fear for [officers'] personal safety, a seizure effectuated with weapons drawn may properly be considered an investigative stop." *Heath*, 259 F.3d at 530 (citing *Hardnett*, 804 F.2d at 357).

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). In *United States v. Avery*, 137 F.3d 343 (6th Cir.1997), the Sixth Circuit explained the various basis for seizures:

> Typically, three levels of encounters between police and citizens are challenged in the courts: (1) the consensual encounter, which may be initiated without an objective level of suspicion, *United States v. Travis*, 62 F.3d 170 (6th Cir. 1995), *cert. denied*, 516 U.S. 1060, 116 S.Ct. 738, 133 L.Ed.2d 688 (1996); (2) the investigative detention, which, if non-consensual, must be supported by a reasonable, articulable suspicion of criminal activity, *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *United States v. Respress*, 9 F.3d 483 (6th Cir.1993); and (3) the arrest, valid only if supported by probable cause, *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). *Investigative detentions and arrests are considered 'seizures' and thus must be conducted consistent with the Fourth Amendment principles described above.*

*Id.* at 352. (emphasis added).

Here, the deputy sheriffs had information from a reliable confidential informant that on July 7, 2000, the informant had spoken to Richardson, and Richardson had agreed to sell him crack cocaine. Richardson, who was under surveillance for cocaine trafficking, departed the residence identified by the confidential informant nearly simultaneously with the informant's telephone call to the surveillance team that

Richardson was departing the residence to deliver the cocaine ordered by the informant. Instead of leaving the area. Richardson drove behind an unmarked sheriff's surveillance vehicle and looked inside the vehicle that was in the cove. Richardson's view may have enabled him to see the deputy sheriff who was seated in the vehicle and was wearing a sheriff's jacket. In the officers' experiences, drug traffickers often attempt to identify law enforcement officers and sometimes use weapons against them. These circumstances caused the officers' seizure and handcuffing of Richardson.

■ Officers who "rely on their experience and training in concluding that weapons are frequently used in drug transactions" act reasonably when the officers use intrusive force to stop a drug suspect. *Heath,* 259 F.3d at 530 (finding investigative stop of person reasonably suspected of carrying drugs did not ripen into arrest). Thus, under *Heath,* the officers' prompt seizure and handcuffing of Richardson constituted a permissible seizure.

■ Richardson contends the deputy sheriffs' subsequent search and arrest of him lacked probable cause, and cites *Leake,* 998 F.2d at 1361, for the proposition that probable cause did not exist where police conducting surveillance observed "nothing unusual." Richardson argues the deputy sheriffs' informant failed to provide the arresting officer with any "explicit and detailed description of the wrongdoing" the informant reported. Richardson cites the "minimal corroboration" of the informant's identification of Richardson, Richardson's limited dealings with the informant, and the informant's "modest" track record working with the deputy sheriffs on narcotics cases (only two).

■ Probable cause is "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *Smith v. Thornburg,* 136 F.3d 1070, 1074 (6th Cir.1998) (quoting *United States v. Bennett,* 905 F.2d 931, 934 (6th Cir.1990)). "[T]he Fourth Amendment does not require that a police officer *know* a crime has occurred at the time the officer arrests or searches a suspect. The Fourth Amendment, after all, necessitates an inquiry into probabilities, not certainty." *United States v. Strickland,* 144 F.3d 412, 415 (6th Cir.1998) (citing *United States v. Barrett,* 890 F.2d 855, 861 (6th Cir.1989)) (emphasis in original). Probable cause to search can only exist if based on "the objective facts known to the officers at the time of the search." *Smith,* 136 F.3d at 1075 (applying the totality of circumstances test set forth in *Gates,* 462 U.S. at 230).

■ "[P]robable cause [to seize property from one's person] means a reasonable ground for belief that the item seized is contraband or evidence of a crime." *Baro,* 15 F.3d at 567 (citing *United States v. Place,* 462 U.S. 696, 701, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) and *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)), but "[a]bsent valid consent, the government must establish that [a] warrantless seizure was justified by probable cause." *Baro,* 15 F.3d at 567 (citing *Place,* 462 U.S. at 701). A "fair probability" of finding "contraband or evidence of a crime ... in a particular place" is sufficient to establish probable cause. *Smith,* 136 F.3d at 1074 (quoting *Gates,* 462 U.S. at 238). With a lawful arrest, an incidental search of Richardson's person is permissible. *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

Here, the probable cause to seize, search and arrest Richardson was established by

the informant's telephone call that Richardson had drugs on his person and had agreed to deliver those drugs to the informant that was received simultaneously with Richardson's departure from the residence. These circumstances constitute probable cause to search Richardson because the informant's call would reasonably lead a prudent person to believe that Richardson possessed cocaine with intent to distribute, and that the deputy sheriffs would find cocaine on Richardson's person. Also, the informant provided the deputy sheriffs' with accurate information, contributing to narcotics seizures and arrests in two other cases.[1] A reasonably prudent person could justifiably believe that at the time of his seizure, Richardson possessed cocaine with intent to distribute.

Richardson cites *United States v. Smith*, 182 F.3d 473, 475 (6th Cir.1999), wherein an informant assisted police on twenty-six cases. Yet, this Circuit's precedents do not require a constitutional minimum for prior reliable contacts with an informant to support a probable cause determination. Although two prior successful contacts with this informant is a small number, the additional corroborating circumstances of the informant's information identifying Richardson from a photograph spread and Richardson's location at the time of the drug deal, were reliable indicators of the informant's credibility. The facts here resemble the factual circumstances in *Strickland*, 144 F.3d at 417, where the officers made an arrest based upon on informant's tip without observing the reported illegal conduct.

As to the officers' search of Richardson's vehicle, the conclusions on the lawfulness of his arrest controls. Although the circuits are split on this issue, this circuit has held that where there is a lawful arrest, arresting officers can search the vehicle even if the defendant is handcuffed. *United States v. Patterson*, 993 F.2d 121, 122 (6th Cir.1993); *United States v. White*, 871 F.2d 41, 43 (6th Cir.1989) (citing *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981)). The facts here reveal that the officers' search of Richardson's nearby vehicle was at the time of his lawful arrest.

The final probable cause issue focuses on the officers' searches of Richardson's girlfriend's residence. As to this residence, Ms. Watson agreed to the search of her residence and her consent is not challenged by Richardson. Thus, the officers' search of her residence cannot be challenged. *United States v. McKae*, 156 F.3d 708, 711 (6th Cir.1998).

### III. CONCLUSION

For the reasons stated above, the district court's denials of Richardson's motions to suppress statements and evidence arising from his seizure, search and arrest are not erroneous. The judgment of the district court is **AFFIRMED.**

---

**1.** The informant ordered two ounces of cocaine from Richardson. The sheriffs found

1.04 ounces of cocaine on his person.