*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0244p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

v.

No. 03-6256

NORBERT PLAVCAK,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 00-00018—Joseph M. Hood, Chief District Judge.

Argued: August 4, 2004

Decided and Filed: June 6, 2005

Before: SUTTON and COOK, Circuit Judges; ROSEN, District Judge.[*]

_____

## COUNSEL

**ARGUED:** David A. Marye, ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Appellant. Robert L. Abell, Lexington, Kentucky, for Appellee. **ON BRIEF:** David A. Marye, Charles P. Wisdom, Jr., ASSISTANT UNITED STATES ATTORNEYS, Lexington, Kentucky, for Appellant. Robert L. Abell, Lexington, Kentucky, for Appellee.

_____

## OPINION

_____

ROSEN, District Judge.

## I. *INTRODUCTION*

This case arises out of the Government's investigation of allegations of immigration fraud by International Labor Resources, Inc. ("ILR"), a company that allegedly recruited illegal aliens to work in the United States and assisted them in obtaining false work documentation. Defendant-Appellee Norbert Plavcak, an employee of ILR, was indicted for interfering with the Government's investigation. Specifically, Plavcak was charged with one count of conspiracy to obstruct justice and to destroy or remove property to prevent seizure, one count of obstruction of justice, and one

_____

[*] The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation.

count of destruction or removal of property to prevent seizure in violation of 18 U.S.C. § 2232(a). Prior to trial, the Government voluntarily dismissed the obstruction of justice count and redacted the conspiracy count to remove references to obstruction of justice.  Then, on the eve of trial, Plavcak submitted a trial memorandum in which he argued that he could not have violated 18 U.S.C. § 2232(a) because the INS agents did not have a warrant authorizing seizure of the items that he was alleged to have been destroying.

The district court treated Plavcak's memorandum as a motion to dismiss the indictment. After considering the Government's opposing arguments, the court determined that § 2232(a) requires a warrant or a warrant exception, both of which the district judge found to be lacking in this case.  Accordingly, the court dismissed the indictment.   The Government now appeals the district court's decision.

Although we agree with the district court that a warrant or a valid warrant exception is needed under § 2232(a), we find that, under the particular facts of this case, sufficient exigent circumstances existed to justify seizure of the evidence at issue. Accordingly, for the reasons more fully developed below, the district court's decision is AFFIRMED, in part, and REVERSED, in part.

## II.  *FACTUAL BACKGROUND*

In November 1999, the Immigration and Naturalization Service (the "INS")  was engaged in an ongoing investigation of alien smuggling, visa fraud, counterfeit document vending and the employment of undocumented aliens by janitorial/cleaning companies in Florida, Virginia and Kentucky.  International Labor Resources, Inc. ("ILR"), a company that allegedly recruited illegal aliens to work in the United States and assist them in obtaining false work documentation, was one of the targets of the investigation.  Pursuant to its investigation into ILR's business practices, on November 16, 1999, the INS obtained two search warrants for specific locations in Lexington, Kentucky -- one to search ILR's business premises and one to search the residence of Charles and Penelope Martin, the owners of ILR.  The warrants authorized the seizure of records, documents, computer hardware and software, and any other media used in documenting ILR's employment practices vis-a-vis illegal aliens.

After obtaining the warrants, in the early morning of November 17, 1999, INS agents visited the apartment of Petr Gloncak and his wife, Jana Gloncakova (collectively, the "Gloncaks").  Their residence was not specified in either of the search warrants.  Gloncak is a citizen of the Czech Republic and was in the United States at the time as a visitor on a visitor's visa.  He was illegally employed and was working for Charles Martin at ILR.

Upon encountering Gloncak at his apartment, INS agents immediately placed him under arrest and took him into custody for overstaying his visa.  Jana Gloncakova was also at the apartment at the time.  Although Gloncakova had also overstayed her visa, she was not taken into custody.  Rather, she was told to report to the INS office in Louisville the next day.

While at the Gloncaks' apartment, INS Special Agent Ronald Johnson observed a computer as well as some documents that he could tell were related to ILR and fit the description of those identified in the search warrants.  However, Johnson did not examine or seize the documents or attempt to obtain a search warrant for the Gloncak residence to authorize their seizure.

Agent Johnson left the apartment with Gloncak, and went to help with the execution of the search warrants.

After the INS agents left the apartment, Jana Gloncakova contacted Defendant Norbert Plavcak, a legal permanent resident who worked with her husband at ILR. Plavcak joined Gloncakova at her apartment and then called the person who originally hired him, Tomasz Rokosz.

Unbeknownst to Gloncakova and Plavcak, Rokosz was acting as a confidential informant ("CI") for the INS.  The CI then observed Plavcak telephone Charles Martin, the owner of ILR, and heard him tell Martin about Gloncak's arrest earlier that morning.   Plavcak then hung up the telephone and told the CI and Gloncakova that Martin had said that the INS was at his house and business at that moment executing search warrants.  Plavcak told the CI that they needed to get rid of some documents before the INS could find them.

The CI attempted to persuade Plavcak and Gloncakova not to destroy the documents, but they were not dissuaded.  Plavcak and Gloncakova took the documents and computer to the apartment of two other ILR alien employees who were Russian.   The CI called INS officials and informed them of Gloncakova's and Plavcak's activities.   Agent Johnson then contacted the Lexington police, who were dispatched to the Russians' apartment.  Meanwhile, Plavcak and Gloncakova began to burn the documents in the fireplace of the Russians' apartment.  Once the police arrived at the Russians' apartment, Gloncakova grabbed the computer, and fled the apartment with Plavcak and the CI down the back stairs while officers were coming up the front stairs. Plavcak and Gloncakova were subsequently apprehended, with the computer, at a local area Wal-Mart store and brought back  to the Russians' apartment.  Agent Johnson then seized the computer and the other remaining documents and charred remains.

On February 3, 2000, Plavcak was indicted by the Grand Jury in the Eastern District of Kentucky and charged with conspiracy to obstruct justice  and to destroy or remove property to prevent seizure, obstruction of justice in violation of 18 U.S.C. § 1503, and destruction and removal of property to prevent seizure in violation of 18 U.S.C. § 2232(a).  Jana Gloncakova was named in the indictment as an unindicted co-conspirator.

On August 21, 2003, the Government dismissed the obstruction of justice charges in count 2 and redacted the obstruction of justice charges from the conspiracy count (count 1), leaving only the charges relating to destruction and removal of property in counts 1 and 3 for trial.  Then, on August 25, 2003, i.e., the day before trial was scheduled to commence, Plavcak filed a trial memorandum which the district court treated as a motion to dismiss the indictment.

In his motion, Plavcak argued that he did not violate 18 U.S.C. § 2232(a) since no warrant ever authorized seizure of the property he was alleged to have destroyed or removed.  The Government opposed the motion, arguing that a search warrant was not required to authorize seizure of the items because exigent circumstances existed, i.e., the items were in the process of being destroyed when the Government agents arrived on the scene.[1]   After considering the parties' arguments, the court ordered that the indictment be dismissed.

### III. *THE DISTRICT COURT'S RULING*

In granting Defendant's motion to dismiss the indictment, the district court read into the provision in 18 U.S.C. § 2232(a) that the seizure be made by any "person authorized to make searches and seizures" a requirement of "proof that the search warrant existed, . . . or that there were grounds to seize them immediately."  *See* 8/26/03 Transcript, p. 13 (quoting *Thomas v. United States*, No. 96-1491, 1997 WL 525408 (6th Cir. 1997)). Finding neither in this case, the district court ordered the indictment dismissed.  The court reasoned:

> The situation we have here is that there were two search warrants issued neither for the property -- neither pertained to the property where this material was

---

[1] The Government also argued that other warrant exceptions, i.e., the plain view doctrine and search incident-to-arrest rule, also justified the seizure of the evidence.

supposedly located. The evidence that was destroyed was not the subject of any warrant at the time it was destroyed.

The evidence may have led the agent to believe that it might have been evidence of a crime, but it was not per se incriminating. It was not something like an obviously sawed-off shotgun or something that was per se incriminating, or -- or a weapon in the hand of a known criminal -- known felon.

The question then becomes: "What could the officer have done?" Well, the officer could have seized it, and then we'd be having an exigent circumstances type of circumstances, but he didn't do that. So that there -- in his mind, he didn't have any authority to seize it. Then it was destroyed if we assume everything that was said to be the case. It would seem to me that Title 18, United States Code, Section 2232(a) does not cover this situation where it was not immediately seizable evidence. It was not per se incriminating. It might have been later subject to a probable cause determination, but in this case it was not evidence of a crime per se.

\* \* \*

As the Court recognized in *Thomas*, . . . the statute requires proof that the search warrant existed, or that there was -- and I read that "or that there was grounds to seize them immediately," and [that] did not occur here.

*Id.* at pp. 10-13.

## IV. *DISCUSSION*

### A.    *STANDARD OF REVIEW*

A district court's order dismissing an indictment is subject to *de novo* review. *See, e.g., United States v. Honaker*, 5 F.3d 160, 161 (6th Cir. 1993) (citations omitted). Issues of statutory construction are likewise reviewed *de novo*. *United States v. Morgan*, 216 F.3d 557, 561 (6th Cir. 2000), *cert. denied*, 531 U.S. 1154 (2001). Similarly, the *de novo* standard governs our review of the district court's determination that no exigent circumstances justified the warrantless seizure of evidence. *United States v. Rohrig*, 98 F.3d 1506, 1511 (6th Cir. 1996).

### B.    *18 U.S.C. § 2232(a) REQUIRES A WARRANT OR A WARRANT EXCEPTION*

As indicated above, the district court determined that 18 U.S.C. § 2232(a) requires a showing of a valid warrant or a warrant exception for the search or seizure of the evidence allegedly destroyed. At the time of the events giving rise to this action Section 2232(a) provided as follows:

Whoever, before, during or after seizure of any property by any person authorized to make searches and seizures, in order to prevent the seizure or securing of any goods, wares, or merchandise by such person, staves, breaks, throws overboard, destroys or removes the same, shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 2232(a) (1999).[2]

---

[2] Section 2232(a) was amended in 2000 by Pub.L. 106-185, § 12, and it currently reads as follows:

Whoever, before, during or after any search for or seizure of property by any person authorized to make such search or seizure, knowingly destroys, damages, wastes, disposes of, transfers, or otherwise

The crime established by this statute has three elements: (1) that a person be authorized to search for or seize certain property; (2) that the accused knowingly destroys or removes or attempts to destroy or remove the property subject to the authorized search or seizure; and (3) that the destruction or removal of the property be for the purpose of preventing its seizure. The issues presented here turn on the first element: whether a "person authorized to make searches or seizures" means a person authorized by a warrant or a warrant exception.

The Government argues that the statute does not limit "person authorized" to a person with a warrant or a warrant exception and posits that "person authorized" means that the search or seizure be effected by a person who has the authority, by virtue of his or her office or position, to execute a federal search and seize property. The district court rejected the Government's argument.

Resolution of this matter presents an issue of statutory construction. "[T]he starting point in any case involving the meaning of a statute [] is the language of the statute itself." *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 210, 99 S.Ct. 1067, 1073 (1979); *Verges v. Gregg's Enterprises, Inc.*, 159 F.3d 989, 990 (6th Cir. 1998). A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning. *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314 (1979). "In construing a federal statute, it is appropriate to assume that the ordinary meaning of the language that Congress employed 'accurately expresses its legislative purpose.'" *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 164, 105 S.Ct. 638, 645 (1985), quoting *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 195, 105 S.Ct. 658 (1985). "[I]f the words of the statute are unambiguous, the judicial inquiry is at an end, and the plain meaning of the text must be enforced." *Hudson v. Reno*, 130 F.3d 1193, 1199 (6th Cir. 1997), *cert. denied*, 525 U.S. 882 (1998), quoting *United States v. Ron Pair Entrs., Inc.,* 489 U.S. 235, 241 (1989).

The parties here dispute the meaning of the term "person authorized" to effect a search or seizure. According to the *American Heritage Dictionary of the English Language* (4th ed.), to "authorize" means "to grant authority or power to," "to give permission for," "to sanction," "to be sufficient grounds for," "to justify." The transitive verb "to authorize" means "to give someone the authority to act." These plain dictionary definitions support the district court's interpretation of the statutory term, "person authorized" as a person empowered to effect a seizure by some action, such as the issuance of a warrant, or an event, i.e., circumstances allowing seizure pursuant to an exception to the warrant requirement. Furthermore, it is a bedrock of American jurisprudence that valid searches and seizures may only be effected pursuant to a warrant or a warrant exception. *See* U.S. Const., amend. IV; *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371 (1980); *Warden, Maryland Penitentiary v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642 (1967); *see also United States v. Rohrig*, 98 F.3d 1506 (6th Cir. 1996). To accept the Government's "general authority" interpretation of the statute would violate the letter and spirit of Fourth Amendment jurisprudence.

Indeed, it was this bedrock Fourth Amendment principle which guided the court in construing the very statute at issue here in *United States v. Gibbons*, 331 F. Supp. 970 (D. Del. 1971), *aff'd*, 463 F.2d 1201 (3rd Cir. 1972). In *Gibbons*, law enforcement officers obtained search warrants to search both the person and home of the defendant for the purpose of obtaining evidence

---

takes any action, or knowingly attempts to destroy, damage, waste, dispose of, transfer, or otherwise take any action, for the purpose of preventing or impairing the Government's lawful authority to take such property into its custody or control or to continue holding such property under its lawful custody and control, shall be fined under this title or imprisoned not more than 5 years, or both.

18 U.S.C.A. § 2232(a) (West 2000).

The 2000 amendments are not germane to the issues presently before the Court.

in connection with a suspected interstate gambling operation. After breaking into a heavily barricaded room where the defendant was located, the agents found gambling paraphernalia and saw him ingesting pieces of papers reasonably assumed to represent additional evidence of gambling. The defendant, refusing to cease eating the paper, was forcibly restrained.

Gibbons was subsequently charged with violating 18 U.S.C. § 2232(a). He moved to dismiss the information based on his contention that the words "before * * * seizure" in § 2232(a) are too indefinite to delineate precisely the period of time within which the crime of destruction of evidence may occur. In resolving this question, the *Gibbons* court applied accepted rules of statutory construction, and denied the defendant's motion reasoning as follows:

> An accepted rule of statutory construction requires that the challenged language be interpreted in the light either of its usual meaning or of other language in the statute. Here the time element intended by the word "before" is to be found in the key words "authorized to make searches." ***There are but two ways by which law enforcement officers may conduct valid searches and seizures, one based upon a search warrant issued upon probable cause, and the other where the officer has strong suspicion that defendant has committed a crime under circumstances where if time were taken to obtain a search warrant, the evidence might be destroyed or otherwise lost***. *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *United States v. DeBose*, 410 F.2d 1273 (6th Cir. 1969); *Dorman v. United States*, 435 F.2d 385 (D.C. Cir. 1970); *Vance v. North Carolina*, 432 F.2d 984 (4th Cir. 1970). Obviously, then, the statute purports to make it a crime to destroy evidence after the issuance of a search warrant or the commencement of "hot pursuit" by an officer who reasonably believes a crime has been committed and evidence is in danger of being destroyed.

331 F. Supp. at 972 (emphasis added).

In *Thomas v. United States*, 124 F.3d 200, 1997 WL 52548 (6th Cir. 1997), an unpublished opinion, we similarly acknowledged that 18 U.S.C. § 2232(a) requires a warrant or a warrant exception. In *Thomas*, the defendant was charged with filing false tax returns and with destroying property to prevent its seizure, and the case went to trial. At the close of the Government's case, the Government moved to dismiss the § 2232(a) count, and the court granted that motion. We noted in a footnote the reason for the dismissal of the Section 2232(a) count:

> ***Count 33, based upon 18 U.S.C. § 2232(a), was dismissed because the statute requires proof that the search warrant existed at the time of the alleged document removal or destruction.*** IRS Special Agent Joseph Ellery made clear in his testimony that such was not the case.

1997 WL 525408 at *2, n.1 (emphasis added).

Based upon the foregoing, we find no error in the district court's construction of 18 U.S.C. § 2232(a). A "person authorized to make searches or seizures" as used in Section 2232(a) means a person authorized, pursuant to a warrant or circumstances giving rise to a warrant exception.

**C.     *SUFFICIENT EXIGENT CIRCUMSTANCES EXISTED TO JUSTIFY A WARRANTLESS SEIZURE***

Although we agree with the district court's construction of Section 2232(a), we disagree with the court's determination that exigent circumstances did not exist to justify seizure of the evidence.

The district court was persuaded that exigent circumstances did not exist because Agent Johnson admitted that he saw the evidence that was later found being destroyed by Plavcak and Gloncakova when he was effectuating the arrest of Petr Gloncak in the Gloncaks' apartment earlier in the day. The district court reasoned that since Agent Johnson took no steps to seize or secure the evidence at that time, the Government was not entitled to later rely upon "imminent destruction of evidence" as exigent circumstances to justify seizure of the evidence.

It is undisputed that the INS agents did not have a warrant for the search of the Gloncaks' or the Russians' apartments. Rather, the agents were acting on a tip from a confidential informant that documents that were reasonably believed to have been the subject of the earlier duly-issued warrants for the searches of the ILR offices and the residence of ILR's owners were being removed and destroyed by Plavcak and Gloncakova. Significantly, this information from the CI was not conveyed to the INS agents until *after* they had left the Gloncaks' apartment and not taken or secured the evidence. Thus, exigent circumstances did not exist at that time. The question then becomes whether exigent circumstances developed subsequently as a result of the information conveyed to the INS agents by the CI.

A determination of whether sufficient exigent circumstances exist to justify a warrantless entry and seizure requires that the court "consider the totality of the circumstances and the 'inherent necessities of the situation at the time.'" *United States v. Rohrig, supra*, 98 F.3d at 1511(quoting *United States v. Johnson*, 9 F.3d 506, 508 (6th Cir. 1993), *cert. denied*, 114 S.Ct. 2690 (1994)). As we observed in *Rohrig*,

> While it is not possible to articulate a succinct yet exhaustive list of circumstances that qualify as "exigent," we have previously characterized the situations in which warrantless entries are justified as lying within one of four general categories: (1) hot pursuit of a fleeing felon, (2) imminent destruction of evidence, (3) the need to prevent a suspect's escape, and (4) a risk of danger to the police or others.

98 F.3d at 1515.

However, we made clear in *Rohrig* that the above-enumerated categories of "exigent circumstances" do not occupy the entire field of situations in which a warrantless entry and seizure may be justified:

> . . . [T]he Fourth Amendment's broad language of "reasonableness" is flatly at odds with any claim of a fixed and immutable list of established exigencies. Moreover, such a claim would ignore the case-by-case and fact-specific development of the existing categories of exigent circumstances. None of the presently recognized exigencies can claim any special constitutional status; instead, each was a product of distinct and independent analysis of the facts of a particular case in light of underlying Fourth Amendment principles. . . .
>
> Therefore, if the situation dictates, we are not precluded from fashioning a new exigency that justifies [a] warrantless [seizure] . . . .

*Id.* at 1519.

In determining whether an exigency existed in this case, we are first guided by the recognition that the Supreme Court cases finding exigent circumstances uniformly cite the need for prompt action by government personnel and conclude that the delay attendant in securing a warrant would be unacceptable under the circumstances. *See e.g., United States v. Santana*, 427 U.S. 38, 43, 96 S.Ct. 2406, 2410 (1976) (warrantless entry into a home was justified where the defendant, a suspect in an ongoing drug investigation, had been standing in a doorway with a paper bag in her

hand, but retreated into the house when the police pulled up and shouted "police," because of the officers' reasonable expectation that any delay would result in destruction of evidence); *Warden, Maryland Penitentiary v. Hayden*, 387 U.S. 294, 299, 87 S.Ct. 1642, 1646 (1967) (because "[s]peed here was essential" in order to find a suspected felon, who, according to witnesses had fled into a house shortly before the police arrived, police were not required to first obtain a warrant to enter and seize the suspect); *Schmerber v. State of California*, 384 U.S. 757, 770-71, 86 S.Ct. 1826, 1835-36 (1966) (because percentage of alcohol in blood diminishes shortly after drinking stops, officer might reasonably have believed that he was confronted with an emergency in which the delay necessary to obtain a warrant threatened the destruction of evidence, and, therefore, it was not necessary for officer to obtain a warrant before testing defendant's blood for alcohol).

Next, when considering whether exigent circumstances are present, the Supreme Court has directed that we balance the interests by weighing the governmental interest being served by the intrusion against the individual interest that would be protected if a warrant were required. *See, e.g., Welsh v. Wisconsin*, 466 U.S. 740, 750-53, 104 S.Ct. 2091, 2098-99 (1984); *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 619, 109 S.Ct. 1402, 1414 (1989). When "insistence on a warrant requirement would impede the achievement of the Government's objective," the Court has not hesitated to find that the scales tip in favor of the Government. *See Skinner*, 489 U.S. at 622-23, 109 S.Ct. at 1416.

Finally, in applying this balancing approach, the Supreme Court has suggested that exigent circumstances will more likely be found where the defendant's conduct has somehow diminished the reasonable expectation of privacy he would normally enjoy and which would normally be protected by the issuance of a warrant.[3] For example, in *Santana,* the Court found that the defendant had forfeited any reasonable expectation of privacy by moving into the doorway of her house, thereby exposing herself "to public view, speech, hearing and touch." *Santana*, 427 U.S. at 42, 96 S.Ct. at 2409. The defendant could not thereafter regain her expectation of privacy and reinstate the warrant requirement by retreating into the house. 427 U.S. at 42-43, 96 S.Ct. at 2409-10.

Applying the foregoing principles in this case, we find that each of these considerations indicates that the warrantless seizure of the evidence was justified by exigent circumstances.

First, after they had left the Gloncaks' apartment and the evidence, the INS agents unquestionably were then confronted with a situation in which time was of the essence. The CI informed them that Plavcak and Gloncakova were told by Charles Martin, the owner of ILR, of the execution of the search warrant at his residence, and that Plavcak and Gloncakova had taken all of the documents pertaining to ILR's business and the computer from their apartment and intended to destroy them. The agents then instructed the CI to attempt to safeguard the evidence and to persuade Plavcak and Gloncakova not to destroy them. The CI, however, was not successful in his attempts to dissuade them. The CI then telephoned Agent Johnson again and reported that Plavcak and Gloncakova were in the process of burning documents in a fireplace in the Russians' apartment, but that they had not yet destroyed all of the documents or the computer. Officers were immediately dispatched to the apartment where they found a fireplace full of ashes and a stack of unburned

---

[3] As the Court explained in *Skinner v. Railway Labor Executives' Ass'n, supra*,

> An essential purpose of a warrant requirement is to protect privacy interests by assuring citizens subject to a search or seizure that such intrusions are not the random or arbitrary acts of government agents. A warrant assures the citizen that the intrusion is authorized by law, and that it is narrowly limited in its objectives and scope. A warrant also provides the detached scrutiny of a neutral magistrate, and thus ensures an objective determination whether an intrusion is justified in any given case.

489 U.S. at 621-22, 109 S.Ct. at 1415-16 (citations omitted).

documents next to the fireplace.  Other agents pursued Plavcak and Gloncakova who had fled the apartment on foot with the computer in their possession.   After apprehending Plavcak and Gloncakova, the agents returned to the Russians' apartment with the two fugitives and seized the computer and undestroyed documentary evidence.  The foregoing amply demonstrates that any delay would have resulted in the complete destruction of all of the evidence.[4]

We next find that the warrantless seizure of the evidence clearly furthered a compelling governmental interest.  The evidence seized was materially important to a wide-ranging, ongoing investigation of alien smuggling, visa fraud, counterfeit document vending and the employment of undocumented aliens in three states.  ILR was one of the primary targets of the investigation.  A federal magistrate judge had already concluded that there was probable cause to believe that evidence relating to the smuggling into, and unlawful employment of, foreign nationals in the United States would be found in ILR's business records.  It is, therefore, clear that insistence on a warrant requirement here would have impeded the achievement of the Government's objective.

Finally, Plavcak and Gloncakova forfeited any reasonable expectation of privacy when they took the documents and computer from their apartment, purchased lighter fluid, and proceeded to the Russians' apartment and began destroying the evidence.  It is well-settled that a person has no reasonable expectation of privacy where he is neither a resident nor an overnight guest in a residence.  *See Minnesota v. Carter*, 525 U.S. 83 (1998).[5]

Based upon the foregoing, we conclude that the warrantless seizure of the evidence at issue here was justified by exigent circumstances.

## *CONCLUSION*

For all of the foregoing reasons, the decision of the district court is AFFIRMED, in part and REVERSED, in part.  The district court's determination that 18 U.S.C. § 2232(a) requires a warrant or a warrant exception is AFFIRMED.  However, the district court's determination that exigent circumstances did not exist is REVERSED.

Accordingly, the district court's dismissal of the indictment is REVERSED, and this case is REMANDED to the district court for further proceedings.

---

[4] The pursuit of Defendant and Gloncakova, who fled the apartment with the computer, further establishes the existence of exigent circumstances, not only as to "hot pursuit" and for the imminent destruction of evidence, but also the need to prevent the suspects' escape.

[5] Defendant not only effectively concedes that he had no reasonable expectation of privacy in the Russians' apartment, he admits that he lacks standing to contest the search, and attendant seizure, of property from that apartment. *See* Brief of Appellee, p. 11 ("[I]t would be conceded that Plavcak had no Fourth Amendment standing in the Russians' apartment. . . .") Although not argued or briefed by the parties, this lack of standing would constitute an alternative basis for exempting the search and seizure in this case from the warrant requirement.