**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0973n.06

**11-3903**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Sep 04, 2012*

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATE DISTRICT COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF OHIO |
| CHRISTOPHER SADDLER, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before:  MARTIN and DAUGHTREY, Circuit Judges; MALONEY[*], District Judge.

MARTHA CRAIG DAUGHTREY, Circuit Judge.  Defendant Christopher Saddler entered a conditional guilty plea to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. 924(a), while reserving the right to contest the district court's denial of his motion to suppress the contents of a safe seized from his front yard during a police investigation that resulted from a 911 burglary-in-progress call directing officers to his residence.  We are asked to reverse the district court's decision that the safe was validly seized and taken to police headquarters, where it was secured for some 22 hours until a search warrant for the safe was obtained.  We conclude that under the totality of the circumstances, the warrantless seizure of the safe was not unconstitutional, given

---

[*]The Hon. Paul L. Maloney, United States District Judge for the Western District of Michigan, sitting by designtion.

the exigent circumstances that existed at the time.  We therefore affirm the judgment of the

district court.

## FACTUAL AND PROCEDURAL BACKGROUND

Based on testimony at a suppression hearing, the district court made the following

findings of fact:

> On June 6, 2010, Cincinnati Police received an initial radio run for shots fired and a second radio call for a burglary at the same location.  At approximately 1:24 a.m., as a result of those radio runs, Sergeant Scott Fritz, a seventeen-year Cincinnati [p]olice [o]fficer and first relief supervisor with experience in drug trafficking, responded to 1313 Considine Avenue, in the area of West Liberty and Considine.

> Arriving on the scene shortly thereafter, Officer Taylor noticed a pair of ladies shoes in the middle of the street, but no victim or complainant was present. A neighbor reported that he saw a black male and a black female jump into a white car and speed away after shots were fired.  Officers observed the 1313 Considine side door open, bullet holes in the house, which was empty, and no victims or perpetrators present.  They also observed bullet fragments and fresh shell casings in the street.  Officers Grote and Weyda appeared and participated in a protective sweep of the residence securing the scene. The location and presence of the bullet fragments and shell casings were consistent with shots being fired from the street toward the house.  Police [o]fficers observed a safe outside the residence and, inside the residence, they observed a cubby hole in the wall from which the refrigerator had been pulled away.  Officer Weyda made the same observations as Sergeant Fritz regarding the bullet holes and bullet fragments and participated in the clearance sweep of the residence.

> Approximately five to ten minutes after the security sweep of the residence was completed the [d]efendant returned home in a white car.  After initially being confronted by [o]fficers, the [d]efendant informed police that people were shooting at him from his house.  He further indicated that he was unarmed and that he was not permitted to carry firearms as an ex-felon. The [d]efendant recounted that he had called 911 and reported that as he returned home he saw two men exiting the side door of his home.  One man

was carrying what appeared to be a television. The other man was armed with a firearm and proceeded to fire the weapon toward [the] [d]efendant as he arrived. The [d]efendant informed the 911 operator that he fled the scene, taking his girlfriend back to her home.

Based on the physical evidence at the scene and its placement, which contradicted [the] [d]efendant's story, the police believed that gun fire had come from the street, not the residence as [the] [d]efendant reported . . .

As stated above, a locked safe had been removed form the premises and left in the yard along with a book bag. Both rested on the ground at the side entrance of the house. Sergeant Fritz asked the [d]efendant if he owned the safe, and [Saddler] stated that he did. Sergeant Fritz then asked the [d]efendant to open the safe and confirm that nothing had been stolen. The [d]efendant stated that he did not remember the combination. When Sergeant Fritz asked the [d]efendant if he would allow him to open the safe, the [d]efendant responded by saying that it really was not his safe and that he was holding it for his brother.

The investigating officer suspected that possibly drugs or money, as the target of the burglary, were secreted in the safe. A canine unit was not available at the time to confirm these suspicions. However, the safe was portable so Officer Weyda put gloves on and placed it in the back of his car for transport. In recovering the safe, Officer Weyda took measures not to contaminate it in order to have it possibly fingerprinted as evidence from the crime scene. The safe was stored at an annex to avoid possible contamination from articles in the standard police property room. The safe was marked with a sign stating, "Do Not Touch, being held for Prints and Dog Sniff." Officers left a voice mail with a canine officer to have the safe "sniffed" the following day.

At 1:45 p.m the following afternoon, police conducted a canine sniff on the safe at the police department . . . After the dog alerted on the safe, an affidavit for a search warrant was prepared, and at 11:16 p.m. that same evening, a judge issued a search warrant. At 11:45 p.m., Sergeant Fritz pried open the safe and removed a white purse containing a small amount of marijuana, two digital scales, two loaded semi-automatic pistols, correspondence letters, and photo identification of Mr. Saddler.

At the close of the hearing, Saddler moved to suppress all evidence obtained from

the safe, contending that the officers seized it without obtaining a search warrant, without

his consent, and without probable cause. The district court concluded that the warrantless seizure of the safe was constitutional, based on four alternative legal theories. First, the district court found that the seizure of the safe was justified under the plain view exception to the warrant requirement. Second, the district court found that the seizure was also valid under the inevitable discovery exception to the exclusionary rule. Third, the district court determined, *sua sponte*, that because Sadler briefly denied ownership of the safe, he lacked standing to challenge the seizure. Finally, the district court found that circumstances on the night of the attempted burglary gave rise to exigent circumstances, in light of the officers' legitimate concern that Saddler or others might remove the safe or tamper with the contents if it were left at the scene. Based on these findings, the district court held that the warrantless seizure was reasonable and denied Saddler's motion to suppress. He now appeals that determination.

## DISCUSSION

"When reviewing the district court's decision on a motion to suppress, we use a mixed standard of review: we review the findings of fact for clear error and conclusions of law *de novo*." *United States v. See*, 574 F.3d 309, 313 (6th Cir. 2009) (citation omitted). "When a district court has denied a motion to suppress, this [c]ourt reviews the evidence in the light most likely to support the district court's decision." *United States v. Adams*, 583 F.3d 457, 463 (6th Cir. 2009) (citations and internal quotation marks omitted).

The Fourth Amendment to the United States Constitution protects "against unreasonable searches and seizures." U.S. Const. amend. IV. A seizure of personal property is "*per se* unreasonable . . . unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." *United States v. Place*, 462 U.S. 696, 701 (1983). However, where law enforcement authorities have both probable cause to believe that a container holds contraband or evidence of a crime and the "exigencies of the circumstances demand it," seizure of the container pending issuance of a warrant to examine the contents has been upheld. *Id.* (citing cases). Nevertheless, "a seizure lawful at its inception can . . . violate the Fourth Amendment [if] its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on unreasonable seizures." *United States v. Jacobsen*, 466 U.S. 109, 124 (1984). The government has the burden of proving the legality of a warrantless seizure. *United States v. Beal*, 810 F.2d 574, 577 (6th Cir. 1987) (citing *United States v. Matlock*, 415 U.S. 164, 177 (1974)).

**Probable Cause**

"In the ordinary case, the Court has viewed a [warrantless] seizure of property as *per se* unreasonable within the meaning of the Fourth Amendment." *Place*, 462 U.S. at 701. "Probable cause, however, can support the detention of property without a warrant, if the exigencies demand it or some other recognized exception to the warrant requirement is present." *United States v. Avery*, 137 F.3d 343, 349 (6th Cir. 2009) (citation omitted).

As the Supreme Court has frequently noted, "[P]robable cause is a flexible common-sense standard. It merely requires that facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of a crime." *Texas v. Brown*, 460 U.S. 730, 742 (1983) (internal quotation marks and citations omitted).

At the suppression hearing, Officer Fritz testified that, in his opinion, "somebody did know where the safe was at and stole it out of [Saddler's] house." As a result, Fritz wanted an opportunity to dust the safe for fingerprints and to inspect the contents to establish a possible motive for the attempted theft of the safe and perhaps even the identity of the burglars. When Saddler refused to open the safe, Fritz decided to seize it, pending a warrant to examine its contents. The circumstances of this case – a burglary investigation that turned up evidence that the burglary had been interrupted by shots fired from the street, with the apparent object of the break-in left lying in the yard, together with evasive answers about its contents – were sufficient to provide the officers with probable cause to believe that the safe would produce evidence related to the attempted burglary. Moreover, given these circumstances, a reasonable officer could conclude that the safe contained contraband. Indeed, Fritz testified that except for the late hour, he would have called a canine unit to the scene, in order to run a "dog sniff" of the safe.

Saddler argues that the officers had no intention of investigating the burglary, pointing out that they never actually analyzed the safe for fingerprints. In truth, after

officers executed the search warrant and discovered firearms inside the safe, the focus

was trained on Saddler, and the safe and any further investigation of the burglary were

scrapped. Given these developments, Saddler contends that the seizure of the safe never

was related to the burglary investigation, but was simply pretextual and thus not supported

by probable cause. As a legal matter, however, the officers' actual motives in seizing the

safe are irrelevant, because "the Fourth Amendment's concern with 'reasonableness'

allows certain actions to be taken in certain circumstances, *whatever* the subjective intent."

*Whren v. United States*, 517 U.S. 806, 814 (1996) (emphasis in original).

**Exigent Circumstances**

We review a district court's legal decision as to exigency *de novo* and will disturb the

court's factual findings only if they are clearly erroneous. *United States v. Gaitan-Acevedo*,

148 F.3d 577, 585 (6th Cir. 1998). A finding is clearly erroneous if we are left with the

"definite and firm conviction that a mistake has been committed" after viewing the entirety

of the evidence. *United States v. Wheaton*, 517 F.3d 350, 367 (6th Cir. 2008) (citation and

quotation mark omitted). In reviewing the district court's findings that sufficient exigent

circumstances existed to justify a warrantless seizure, we consider the "totality of the

circumstances and the inherent necessities of the situation." *Brooks v. Rothe*, 577 F.3d

701, 708 (6th Cir. 2009) (citing *United States v. Rohrig*, 98 F.3d 1506, 1511 (6th Cir.

1996)). "The inquiry focuses not on an officer's subjective intentions, but on whether an

objectively reasonable officer could have believed that exigent circumstances existed."

*Rothe*, 577 F.3d at 708 (citing *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 999 (6th Cir. 1994)).

"This court has long recognized, along with many others, that exigent circumstances will be present when there is an urgent need to prevent evidence from being lost or destroyed." *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1511 (6th Cir. 1988). To establish exigent circumstances under this exception, the government must first show "an objectively reasonable basis for concluding that the loss or destruction of evidence is imminent." *Id.* at 1512. Second, the court must "balance the interests by weighing the governmental interests being served by the intrusion against the individual interest that would be protected if a warrant were required." *United States v. Plavcak*, 411 F.3d 655, 664 (6th Cir. 2005).

Thus, we first evaluate whether the officers had an objectively reasonable basis for concluding that evidence would be tampered with or destroyed if the safe were not seized immediately pending issuance of a search warrant. At the suppression hearing, Officer Fritz testified:

> It was obvious that the safe had been removed [from the residence]. As I said, during my protective sweep I had noticed one of the refrigerators had moved away from the wall – or had been moved away from the wall. There was a cubby hole about the same size of the safe that was in the kitchen area, like the safe would have been secreted back to hide it. So my theory was that somebody did know where that safe was at and stole it out of [Saddler's] house . . . .

> This type of offense, my training, experience would tell me that it's somehow drug related or drugs and/or money, being that safe was secreted inside of a house like that, and shots were fired . . . .

Based on the evidence educed at the hearing, the district court relied on the fact that the safe was portable and likely contained something valuable or illegal to establish probable cause.

We cannot say that the district court was clearly erroneous in concluding that the officers reasonably feared that Saddler or someone else would attempt to destroy the evidentiary value of the safe or its contents. Because the safe was small and easy to transport, the burglar or burglars had very nearly succeeded in stealing it from inside the house. The officers hoped to preserve any fingerprints that could be lifted from the safe and did not want others to compromise the prints. When Saddler initially admitted that he owned the safe but refused to open it, moreover, it was objectively reasonable for the officers to believe that Saddler or a third party might remove the evidence from inside the safe, take the safe from the scene, or otherwise tamper with it. Given Saddler's evasive responses to questioning, the size of the safe, its location, and its importance to the investigation, we conclude that it was not unreasonable for the police to seize the safe. *See Illinois v. McArthur*, 531 U.S. 326, 332 (2001) (finding it reasonable to conclude that someone suspecting an imminent search "would, if given the chance," get rid of contraband quickly).

Having concluded that the officers' fear that evidence would be lost or destroyed was objectively reasonable, we now weigh the government's interest being served by the intrusion against the individual interest protected by the warrant requirement. *See Plavack*, 411 F.3d at 664. The government's interest in solving crimes is significant, of course, and the evidence seized was materially important to the investigation of the burglary. *See Wilson v. Collins*, 517 F.3d 421, 427 (6th Cir. 2008). Because the officers seized the safe but did not search it until they had a search warrant, the seizure affected only Saddler's possessory interest in the safe and did not implicate a privacy interest. *See Segura v. United States*, 468 U.S. 796, 810 (1984). Notably, other circuits have considered this lesser interference as a factor when upholding warrantless seizures. *See United States v. Mitchell,* 565 F.3d 1347, 1350 (11th Cir. 2009); *United States v. Licta*, 761 F.2d 537, 541 (9th Cir. 1985). Moreover, unlike the seizure of luggage in an airport, no liberty interest was impinged by the seizure of the safe *i.e.*, it did not lead to the effective detention of Saddler. *See Place*, 462 U.S. at 708-09. The seizure was also of limited duration; the officers received a warrant to search the safe 22 hours later.

In sum, considering the brief nature of the intrusion into Saddler's possessory interest, the fragility of the evidence, as well as the government's significant interest in solving crime, we conclude that the government's interest outweighed the individual interests at issue. Because it was reasonable for the officers to conclude that leaving the safe risked the imminent destruction of evidence, and the balance of the interests justified the government's need to seize without a warrant, we uphold the district court's

determination that exigent circumstances existed. That conclusion, in conjunction with probable cause to believe that the safe contained evidence related to the investigation of a crime, justified the warrantless seizure.

**Reasonable Execution of the Seizure**

Though the government has met its burden by establishing that exigent circumstances existed to justify a warrantless seizure, "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on unreasonable seizures." *Jacobsen*, 466 U.S. at 124 (internal quotation marks omitted). Thus, we look at the totality of the circumstances to determine whether it was reasonable for the officers to seize the safe immediately, rather than leave officers at the scene and wait until the next day to apply for a search warrant, depriving Saddler of possession of the safe overnight. *See Ohio v. Robinette*, 519 U.S. 33, 38 (1996) ("We have long held that the touchstone of the Fourth Amendment is reasonableness. Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances.") (citation and internal quotation marks omitted).

Saddler argues that it was unreasonable to seize the safe because other, less intrusive investigative methods were available to the officers. He suggests that, instead of seizing the safe, the officers should have dusted for fingerprints at the scene and remained there until a canine unit was available. But, Officer Fritz's testimony detailed his

reasons for seizing the evidence rather than leaving an officer at the scene to secure it. First, he wanted to have a "canine sniff" of the safe before applying for the warrant, but it was the middle of the night and the canine units were all off duty. Second, securing the scene would have required having two or three officers remain at the scene, and he did not want to tie up that many officers overnight. When Officer Fritz reported for his next shift, at 8:00 p.m. the next day, he prepared an affidavit for a search warrant and did not open the safe until he obtained the warrant.

Although it might have been less intrusive to order officers to remain on the scene, the Fourth Amendment does not require officers to engage in the least intrusive search or seizure.[1] As the Supreme Court observed in *United States v. Sharpe*, 470 U.S. 675 (1985):

> A creative judge engaged in post hoc evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished. But the fact that the protection of the public might, in the abstract, have been accomplished by less intrusive means does not, itself, render the search unreasonable. The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or pursue it.

---

[1] The cases defendant cites as requiring officers to use the least intrusive means address the detention of luggage in a traveler's immediate possession. *See Place*, 462 U.S. at 708-09 (finding that seizing a person's luggage was equivalent to detention of the person and holding that a 90-minute detention was unreasonable); *United States v. Sanders*, 719 F.2d 882, 887 (6th Cir. 1983) (concluding that "detaining the suitcase and the suspect for over three hours" was excessive in duration and not the least intrusive means for accomplishing the investigation). Unlike the luggage in those cases, the seizure of the safe did not amount to an effective detention of Saddler. Moreover, seizure of the luggage in *Place* and *Sanders* was based on reasonable suspicion, as contrasted to the probable cause that supported the seizure in this case. *See Place*, 462 U.S. at 698; *Sanders*, 719 F.2d at 883.

*Id.* at 686-87 (internal quotations and citations omitted). Although, as Saddler suggests, an alternate path might have been to seek a warrant immediately or leave officers behind to maintain the status quo, we cannot say Fritz was unreasonable in choosing to seize the safe. Other circuits considering this issue have agreed that, in circumstances such as this, "the Fourth Amendment does not require the least intrusive alternative; it only requires a reasonable alternative." *United States v. Prevo*, 435 F.3d 1343, 1348 (11th Cir. 2006). *See also United States v. Brooks*, 367 F.3d 1128, 1135-36 (9th Cir. 2004) (rejecting defendant's suggestion that the officer was required to adopt a less intrusive alternative); *United States v. LaFrance*, 879 F.2d 1, 4 (1st Cir. 1989) (refusing to create a standard "tantamount to requiring government agents to adopt the least intrusive means possible.").

Next we consider the length of time the safe was detained. *See LaFrance*, 879 F.2d at 6 ("[T]hough the duration of a detention is an important consideration in evaluating the intrusiveness of a package's determent, it is neither the mirror image of unreasonableness nor the yardstick against which the suitability of police procedures must inevitably be measured."). Here, the warrantless seizure lasted approximately 22 hours.[2] Because seizure of containers affects only possessory interests and not the privacy interests vested in their contents, lengthy seizures of containers have been upheld by other courts. *See, e.g.*, *United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998) (upholding 11-day seizure

---

[2] Fritz testified that he seized the safe around 1:30 a.m. He filled out the application when he came on duty at 8:00 p.m. and obtained the search warrant at 11:16 p.m. that evening. Thus, the warrantless portion of the seizure lasted approximately 22 hours.

because of delays in ability to acquire a warrant); *United States v, Mayomi*, 873 F.2d 1049, 1054 (7th Cir. 1989) (upholding a 48-hour detention of mailed packages and noting that privacy interest was not disturbed); *United States v. Van Leeuwen*, 397 U.S. 249, 253 (1970) (upholding a 29-hour warrantless seizure of a mailed package, based upon an unavoidable delay in obtaining a warrant and the minimal nature of the intrusion on the defendant's possessory interest).

Considering the evidence in the record, we cannot say that Fritz lacked diligence in applying for the search warrant within a reasonable time. *See Sharpe*, 470 U.S. at 687 ("Respondents presented no evidence that the officers were dilatory in their investigation."). Fritz did not prepare a search warrant before going to Saddler's house because he was responding to an emergency call. He could not have known what he would find at the scene or have anticipated that Saddler, the victim of the burglary and attempted theft, would refuse to assist in the investigation. When he realized that the safe, in addition to being evidence of the burglary, might also contain contraband, he responded reasonably. Given the totality of the circumstances, we can not say that the seizure was unreasonable.

Our decision in *United States v. Respress*, 9 F.3d 483 (6th Cir. 1993), supports this conclusion. There, we noted that "[t]he practice of seizing an item based on probable cause in order to secure a search warrant" has long been approved. *Id.* at 486 (citing cases). We then considered whether the duration of the seizure pending the issuance of a search warrant was reasonable. *Id.* at 488. We concluded that "the time between the

seizure of the suitcase and the issuance of the warrant was approximately ten hours, and, given the time of day, this was not an unreasonable length of time for preparing an affidavit, submitting it to a magistrate, having it reviewed, and getting the warrant issued." *Id.* at 488. Although the seizure here was longer, there was adequate justification for the delay.

Because we conclude that the district court did not err in determining that probable cause, coupled with exigent circumstances, justified the seizure of the safe as evidence in connection with the burglary of Saddler's residence, we find it unnecessary to review the court's other analyses.

## CONCLUSION

For the reasons set out above, we decline to reverse the denial of Saddler's motion to suppress and, therefore, AFFIRM the judgment of the district court.