**Lawrence ROSEN, Appellant**

v.

**COMMONWEALTH of Kentucky, PUBLIC PROTECTION CABINET, DEPARTMENT OF FINANCIAL INSTITUTIONS; and Charles A. Vice, Commissioner, Appellees.**

**No. 2013–CA–001211–MR.**

Court of Appeals of Kentucky.

May 23, 2014.

Discretionary Review Denied by Supreme Court Feb. 11, 2015.

---

Trevor W. Wells, Louisville, KY, for appellant.

Simon Berry, Frankfort, KY, for appellee, Department of Financial Institutions.

Before CAPERTON, CLAYTON, and NICKELL, Judges.

## OPINION

CAPERTON, Judge:

Lawrence Rosen appeals from the Franklin Circuit Court's July 5, 2013,

Opinion and Order, whereby the court affirmed the Department of Financial Institution's ("DFI") corrected final order finding that Rosen was an unregistered investment adviser in the Commonwealth; the court affirmed the penalties and fines assessed against Rosen by the DFI. After a thorough review of the parties' arguments, the record, and the applicable law, we affirm.

Rosen operates a sole proprietorship under the name Larry Rosen Co. out of his home in Louisville, Kentucky. Rosen entered into a contract with Client # 1 in January 2004. Under this contract, Rosen was granted the authority to make purchases and sales of securities in Client # 1's brokerage account. Client # 1 would then compensate Rosen with ten percent of the gross proceeds of options sales, dividends, and interest received in the account from the date of the contract until its termination. The terms of the contract explicitly stated Rosen had complete discretion over the securities traded in the brokerage account and that he was not required to obtain approval prior to conducting a transaction.

Thereafter, Rosen performed under the contract by buying and selling securities in Client # 1's brokerage account, without any prior approval and for which Rosen was compensated. In July 2009, Rosen executed another contract with Client # 2, of which the terms and conditions of the agreement were the same as Client # 1's contract. At no time has Rosen been a registered investment adviser with the DFI.

The DFI filed an Administrative Complaint on August 30, 2011, alleging that Rosen acted as an unregistered investment adviser. The DFI sought fines, costs, and attorney's fees against Rosen pursuant to Kentucky Revised Statutes (KRS) 292.500; specifically, the DFI sought a $5,000 fine, the DFI's costs and attorney's fees, and an order that Rosen cease and desist from acting as an investment adviser and cease and desist from committing any other violations of the Act. Rosen denied that the services he provided to his clients amounted to advising; instead, Rosen claimed that his services were the management of the funds.

The parties filed discovery and various motions. The hearing officer entered a recommended order granting the DFI's motion for summary judgment on June 13, 2012,[1] whereby the hearing officer concluded that Rosen was an unregistered investment adviser, but that a fine, costs, and fees did not appear to be reasonable as Rosen had good cause to believe that he was not covered by the statute when he actually was covered.[2]

Thereafter, the Commissioner of DFI adopted the recommended order in part and rejected it in part in a corrected final order of September 12, 2012. First, the Commissioner adopted the facts admitted by the parties as those contained in paragraphs 1–8 of the Administrative Complaint and in the two contracts between Rosen and his clients. Other statements made by the hearing officer were not designated as "findings" and thus were not adopted by the Commissioner and taken into consideration as to whether Rosen was an unregistered investment adviser. Next, the Commissioner concluded in

---

1. This June 13, 2012 order incorporated prior orders issued by the hearing officer.

2. The hearing officer additionally concluded that while Rosen only had two clients and did not advertise, his place of business was his home in Louisville. This conclusion was relevant to the determination that Rosen did not qualify for an exemption under KRS 292.330(9).

agreement with the recommended order that Rosen operated as an unregistered investment adviser. Thus, the Commissioner ordered Rosen to cease and desist operating as an unregistered investment adviser in Kentucky and from violating other provisions of the Act.

The Commissioner's final order also directed Rosen to pay a fine of $5,000 per KRS 292.500(14) and was ordered to pay the costs associated with enforcement of the action in accordance with KRS 292.500(16). It was noted that such costs did not include any Complainant's attorney or employee time or expenses and consisted solely of those charges which have or will be submitted for payment by the hearing officer. It is from this final order that Rosen sought judicial review by the Franklin Circuit Court.

Rosen appealed to the circuit court the DFI's corrected final order which declared that his actions with respect to his investment activities regarding two clients caused him to fall under the definition of investment adviser per KRS 292.310(11). The DFI also relied upon KRS 292.330(8), which makes it unlawful to transact business in this state as an investment adviser unless the person is registered; Rosen is not registered as an investment adviser. The court noted that DFI maintained that Rosen qualified as an investment adviser as he bought and sold securities without his client's prior approval; thus, he was advising them as to the prudence of investing in, purchasing, or selling securities. Rosen argued that he was not advising his clients but instead was managing their investments and that he did not advise them formally of any actions he recommended or discouraged. Rosen further argued that he did not meet with the clients to review possible trades or acquisitions because his purpose was to manage the accounts and nothing more.

To interpret the definition of investment adviser in KRS Chapter 292, the court looked at the purpose of the chapter, found in KRS 292.530, which is to protect investors by preventing investment fraud and illegal conduct, and to educate the public to make informed investment decisions. The court concluded that in light of the spirit and intention of the applicable chapter, it was evident that Rosen's behavior fell under the definition of an investment adviser. The court further concluded that Rosen's attempt to coin his activities as simply managerial was misplaced. The court found that the ability to circumvent any type of consultation by granting oneself absolute discretion involving investment activities does not constitute management. Rosen received ten percent of the gross proceeds of the options sales, dividends, and interest as compensation, and this furthers the DFI's interpretation. He was not paid a set fee and was not merely monitoring accounts. Instead, he was granted sole discretion to deal as he saw fit. The court determined that bypassing any requirement to obtain prior approval did not make Rosen's actions any less those of an investment adviser. The court concluded that Rosen's actions involved discretion that represented investment advice. The court further concluded that the given purpose of the statutes is to protect the consumer and that the relationship between Rosen and his clients was one of complete discretion. The court held that the Legislature intended protection to extend to Rosen's clients. Thus, the court affirmed the DFI's conclusion that Rosen was an unregistered investment adviser and that the penalties and fines imposed were proper. It is from this order that Rosen now appeals.

On appeal, Rosen argues that the DFI and the circuit court erroneously interpreted the definition of "investment adviser" in

KRS 292.310(11) by equating the management of funds as advising others about securities, which Rosen argues is antithetical to the plain meaning of "advising." The DFI argues that Rosen acted as an investment adviser as defined by KRS 292.310(11) because he directly advises his clients by executing his investment strategy through the purchases and sales of securities in their brokerage accounts. With these arguments in mind we turn to our applicable standard of review.

Concerning our review of an administrative action, the court in *American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Commission*, 379 S.W.2d 450 (Ky.1964) held:

> Basically, judicial review of administrative action is concerned with the question of *arbitrariness*.... The above three grounds of judicial review, (1) action in excess of granted powers, (2) lack of procedural due process, and (3) lack of substantial evidentiary support, effectually delineate its necessary and permissible scope.... In the final analysis all of these issues may be reduced to the ultimate question of whether the action taken by the administrative agency was arbitrary.

*American Beauty Homes Corp.* at 456–57 (internal citations omitted).

Generally speaking:

> The circuit court's role as an appellate court is to review the administrative decision, not to reinterpret or to reconsider the merits of the claim, nor to substitute its judgment for that of the agency as to the weight of the evidence. Thus, the circuit court must determine both "[i]f the findings of fact are supported by substantial evidence of probative value" and "whether or not the administrative agency has applied the correct rule of law to the facts so found." "The test of substantiality of evidence is whether ... it has sufficient probative value to induce conviction in the minds of reasonable [persons]." Further, " 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.' " As long as there is substantial evidence in the record to support the agency's decision, the court must defer to the agency, even if there is conflicting evidence.

> ....

> An administrative agency, such as the Cabinet, is "afforded great latitude in its evaluation of the evidence heard and the credibility of witnesses appearing before it" [citation omitted]. "[A]lthough a reviewing court may arrive at a different conclusion than the trier of fact in its consideration of the evidence in the record, this does not necessarily deprive the agency's decision of support by substantial evidence" [citation omitted]. Further, even if this Court would have come to a different conclusion if it heard the case *de novo*, it must affirm the administrative agency's decision if supported by substantial evidence. "[I]t is the exclusive province of the administrative trier of fact to pass upon the credibility of witnesses, and the weight of the evidence" [citation omitted]. Indeed, an administrative agency's trier of facts may hear all the evidence " 'and choose the evidence that he believes' " [citation omitted]. " 'If the findings of fact are supported by substantial evidence of probative value, then they must be accepted as binding and it must then be determined whether or not the administrative agency has applied the correct rule of law to the facts so found' " [citations omitted].

*500 Associates, Inc. v. Natural Resources and Environmental Protection Cabinet,*

204 S.W.3d 121, 131–32 (Ky.App.2006) (internal citations omitted).

The crux of the matter *sub judice* is the interpretation of a statute. "Because statutory interpretation is a question of law, our review is de novo; and the conclusions reached by the lower courts are entitled to no deference." *Commonwealth v. Love*, 334 S.W.3d 92, 93 (Ky.2011). Concerning our review of an administrative agency's interpretation of a statute, this Court has stated:

> The interpretation of a statute is a matter of law. *Commonwealth v. Garnett*, 8 S.W.3d 573, 575–6 (Ky.App.1999). However, while we ultimately review issues of law de novo, we afford deference to an administrative agency's interpretation of the statutes and regulations it is charged with implementing. *Board of Trustees of Judicial Form Retirement System v. Attorney General of Com.*, 132 S.W.3d 770, 787 (Ky.2003); *Chevron, U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 843–845, 104 S.Ct. 2778, 2782–2783, 81 L.Ed.2d 694 (1984) (If the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute).

*Commonwealth, ex rel. Stumbo v. Kentucky Public Service Com'n*, 243 S.W.3d 374, 380 (Ky.App.2007).

Our duty as a court is to effectuate the intent of the legislature in construing a statute. *Hall v. Hospitality Resources, Inc.*, 276 S.W.3d 775, 784 (Ky.2008), citing *Commonwealth v. Plowman*, 86 S.W.3d 47, 49 (Ky.2002). "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Hall, id.* citing *United States v. Plavcak*, 411 F.3d 655, 660 (6th Cir.2005). Thus, we ascertain the intention of the legislature from words used in enacting statutes rather than surmising what may have been intended but was not expressed. *See id.* at 784.

■ At issue, KRS 292.310 states:
When used in this chapter, unless the context otherwise requires:

. . . .

(11) "Investment adviser" means any person who, for compensation, directly or indirectly, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as a part of a regular business, issues or promulgates analyses or reports concerning securities. "Investment adviser" does not include:

(a) A bank, savings institution, or trust company;

(b) A lawyer, accountant, engineer, or teacher whose performance of these services is solely incidental to the practice of his profession;

(c) A broker-dealer whose performance of these services is solely incidental to the conduct of his business as a broker-dealer and who receives no special compensation for them;

(d) A publisher of any bona fide newspaper, news magazine, or business or financial publication of general, regular, and paid circulation;

(e) A person whose advice, analyses, or reports relate only to securities exempted by KRS 292.400(1);

(f) An investment adviser representative or a person excluded from the definition of investment adviser representative;

(g) A person who is excluded from the definition of investment adviser under Section 202(a)(11) of the Investment

Advisers Act of 1940, 15 U.S.C. sec. 80b–2(a)(11);

(h) A covered adviser; or

(i) Such other persons not within the intent of this subsection as the commissioner may by rule or order designate;

In concluding that Rosen's active management of his clients' accounts rendered him an investment adviser, the trial court relied upon the guidance found in KRS 292.530, which states:

(1) The purpose of this chapter is to:

(a) Protect investors by preventing investment fraud and related illegal conduct or, if this fraud or illegal conduct has already occurred, remedying, where possible, the harm done to investors through active implementation and application of this chapter's enforcement powers;

(b) Educate the investing public as to the best methods for making informed investment choices; and

(c) Assist companies in their legitimate attempts to raise capital and transact in securities in Kentucky.

(2) In addition, this chapter shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it and to coordinate the interpretation and administration of this chapter with the related federal regulation.

We do not believe that such reliance was in error, as:

One of the fundamental maxims of statutory construction is that an act "is to be read as a whole[,]" i.e., "any language in the [act] is to be read in light of the whole [act], not just a portion of it." "The point of this maxim is that the whole [act] provides the context into which to place any language found in the [act].

*Popplewell's Alligator Dock No. 1, Inc. v. Revenue Cabinet,* 133 S.W.3d 456, 465 (Ky.2004)(internal footnotes omitted).

We agree with the trial court and the DFI that by having unfettered discretion and thereby buying and selling securities as he saw fit, Rosen was advising his clients as to the prudence of investing in, purchasing, or selling securities through his actions. The clients understood that the trades made by Rosen were based on his expertise in trading and the clients could see what trades he made on their behalf and, thus, understood that these trades were based on his recommendations. To hold otherwise would be to leave investors unprotected, in disregard of KRS 292.530.

We likewise agree with the trial court that the DFI's imposition of fines and penalties was proper under KRS 292.500 because Rosen was acting as an unregistered investment adviser in contravention of KRS 292.330(8).[3]

Finding no error in the trial court's order, we affirm.

ALL CONCUR.

---

**3.** The parties argue over the applicability of *Abrahamson v. Fleschner,* 568 F.2d 862 (2d Cir.1977), wherein the Second Circuit addressed management and investment advisers. However, we believe this to be a nonissue because the trial court did not rely upon *Abrahamson* in its order affirming the DFI's final order, which also did not rely upon *Abrahamson.* Indeed, the only mention of *Abrahamson* is in the hearing officer's recommended order, where the hearing officer notes that the DFI relied heavily upon it in its reasoning. Thus, we do not believe that the final order or the trial court's order was impermissibly bound by *Abrahamson.*